JAMES H. ASHMEAD AND OTHERS; APPEAL FROM PROBATE.

The court of probate, in making an order for the payment of debts allowed by commissioners on an insolvent estate, has power to make equitable preferences between different classes of general creditors.

A manufacturing firm, being embarrassed by its debts, made an arrangement with its creditors, under which the members of the firm formed a joint stock corporation which assumed the debts of the firm, the assets of the firm being transferred to the corporation, a part of them constituting its capital and the rest a surplus to be used by the company in working out the debts. After the corporation had gone on a few months, and incurred debts to other parties in the regular course of its business, it failed and made an assignment of its property for the benefit of its creditors. Both classes of claims were presented to and allowed without discrimination by the commissioners on the estate. The assets proved insufficient to pay the debts in full, and the court of probate ordered that the direct debts of the corporation should first be paid in full. Held that the court had the power to make this order, and that the judgment of the commissioners in allowing both classes of claims equally, though in itself final so far as the mere liability of the corporation was concerned, was yet no bar to the action of the probate court, which pertained merely to the distribution of the assets, not to the indebtedness of the corporation.

APPEAL to the superior court from a probate decree ordering distribution of the funds of the insolvent estate of the Grove Car Works, in the hands of the trustee, among the creditors of the estate.

The principal facts of this case are stated in the report of *Waterman's Appeal from Probate*, 26 Conn., 97. It was determined in that case that the debts originally due from Fales & Gray, and which the corporation undertook to assume, were legally assumed by the latter, and constituted claims properly allowable by the commissioners against the insolvent estate of the corporation. The amount of the debts of this class allowed by the commissioners was $98,893. The amount of debts incurred by the corporation after it commenced business, down to the time of its failure, and which were incurred in the regular course of its business, was, as allowed by the commissioners, $23,125. The assets of the corporation, as inventoried by the trustee, were appraised at $182,131, but the whole amount realized from their sale,

after deducting the expenses of settling the estate, was only $19,000,—leaving only that sum for distribution. After the settlement of the administration account of the trustee, sundry of the direct creditors of the corporation filed in the court of probate an application to have the order of distribution so made as to give the creditors of that class a priority in payment to the Fales & Gray creditors, claiming that they were, on the facts, equitably entitled to such preference, and praying the court to inquire into the facts. The probate court ordered notice of the application to be given, and had a full hearing of the same upon evidence; the Fales & Gray creditors appearing and defending against it, but protesting against the right of the court to inquire into the facts, claiming that the report of the commissioners was final and conclusive as to the validity of their claims for all purposes. The probate court, having heard the case, made the following order:

" It appearing to this court, upon the settlement of the account of said trustee, that there is in his hands for distribution among the creditors of said estate the sum of $19,000,—and it also appearing upon the commissioners' report, that said commissioners have allowed sundry claims for debts originally contracted by said Grove Car Works, amounting, after making all legal deductions therefrom, to the sum of $23,125,—and it also appearing by said report that said commissioners have allowed sundry claims against said estate for debts originally contracted by Fales & Gray, which claims have not been disallowed or set aside by appeal or otherwise, amounting, after making all legal deductions therefrom, to the sum of $98,893 :—It is therefore ordered, that the trustee distribute the said sum of $19,000 in his hands, among the creditors of said estate whose claims for debts originally contracted by said Grove Car Works have been allowed as aforesaid, in proportion to the amounts of said respective claims, the average being eighty-two cents, one and one-third mills; there being no surplus for distribution among the other creditors of said estate."

From this order an appeal was taken by sundry of the Fales & Gray creditors, uniting in their appeal under the

provisions of the insolvent act of 1853. The superior court made a special finding of the facts and reserved the case for the advice of this court.

*T. C. Perkins* and *Hooker* for the appellants.

1. The claims of the Fales & Gray creditors having been allowed by the commissioners, stand on the same ground as if a judgment had been rendered in an action at law, and all questions as to the propriety of the allowance are foreclosed.

2. The allowance having been absolute and unconditional, it can not now be claimed that the Grove Car Works merely took a trust and are liable only for the application of the trust property.

3. If the question were now open it clearly is not a case of trust. The Grove Car Works assumed to pay, and on a valuable consideration. The supreme court has decided it to be a case of assumption by the corporation. *Waterman's Appeal from Probate,* 26 Conn., 96.

4. No such equity exists as is claimed by the appellee, as a ground for giving a preference to the direct creditors over the Fales & Gray creditors.

5. The court of probate has no power to make an order giving a preference in the manner in which the same was done. The statute, after providing for the allowance of claims by the commissioners, expressly directs that after paying the expenses of the settlement, lawful taxes and debts due to the state, *the debts of the several creditors shall be paid, as allowed, in proportion to their respective amounts.* Rev. Stat., tit. 14, § 78. See also *Findley* v. *Hosmer,* 2 Conn., 350; *Hotchkiss* v. *Beach,* 10 id., 232; *Peck* v. *Harrison,* 23 id. 118, 122. The rule, as we understand it, is this. A court of probate, in the exercise of chancery powers, may order that a debt allowed by commissioners, and afterwards paid, or by some subsequent event ceasing to be justly payable, shall not be paid with the other debts. This is merely an ordinary chancery power. It is of every day application, and finds an illustration in the case of several judgments against the maker and endorsers of a note, every one of which judgments

is valid at law, but the satisfaction of one of which is an equitable satisfaction (except as to costs,) of the others. Here the equitable matter is wholly subsequent, and no matter of prior date to the judgment could be made the ground of such an equity. The principle that you can not go back of a judgment is never violated by the exercise of this chancery power. This principle, we conceive, presents an insuperable barrier to the legal exercise of such a power as is claimed by the court of probate in this case. There may undoubtedly be claims which a party himself could not resist, as in the case of a voluntary bond, which yet ought not to be paid out of his estate to the prejudice of *bona fide* creditors. But where such a claim is presented against the estate of the party, it is the duty of the commissioners to report it as such a claim. It is expressly so decided in the case of *Hotchkiss* v. *Beach*, cited above, and it would seem to be properly so held, since the claims presented to the commissioners are presented as claims *against the estate*, and are important only as being such. The estate is the subject matter of the settlement. The question is not what ought the debtor personally to pay, but what ought the estate to pay. But this case is not like the one supposed. Here there was a good consideration for the debt created. The claims were objected to before the commissioners and contested before this court on the former trial on the very ground that there was no consideration, and allowed by the commissioners and afterwards by this court on the ground that there was a valuable consideration.

*Fellowes* and *L. F. Robinson,* for appellees.

1. Equity demanded that the assets of the insolvent corporation should be marshalled and apportioned among the two classes of creditors recognized by the commissioners' report. The Grove Car Works were organized merely to work out the debts of Fales & Gray. The debts which they incurred in attempting to do this, certainly have a higher equity than those debts. The corporation was practically merely taking the property in trust for the purpose of paying

the debts from the avails.   The direct creditors trusted them
in good faith, in entire ignorance of any incumbrance on
their capital, which was certified by the corporation to be all
paid in, and which they had a right to suppose was all paid
in in cash.

2. The court of probate had the power to pass a decree
ordering equitable apportionment of the assets.   *Bailey* v.
*Strong*, 8 Conn., 281.   *Peck* v. *Harrison*, 23 Conn., 118:
2 Sto. Eq. Jur., § 1037, 8.   *Kittera's Estate*, 17 Penn., 423.
*Briel's Appeal*, 24 id., 511.   The power to order pay-
ment involves the power to direct the mode.   Courts of pro-
bate have chancery powers as well as legal.   In making the
order they are not dealing with the debts, but with the assets.
The commissioners decide nothing except as to the validity
of claims against the estate generally, they do not act upon
the question as to whether one class of claims has a better
right to the assets than another.   The court of probate may
therefore marshall assets without interfering with the prov-
ince of the commissioners or contravening the statute as to
the payment of debts.

ELLSWORTH, J.   The controversy in this case is among
the creditors of the Grove Car Works, as to the proper dis-
tribution of the assets of the corporation in the hands of the
general assignee.   The court of probate decided that it had
itself jurisdiction of the matter, and ought to allow a prefer-
ence in behalf of those creditors who became such in the
progress of the business of the company after its incorpora-
tion, to such as were creditors of Fales & Gray before the
corporation had an existence, and became creditors of the
company by its assumption of these debts afterwards.

We do not see any reason to doubt the correctness of this
decision of the probate court and of the decree founded upon
it.   Certain it is that the decree is most just and equitable,
and it should not be reversed if it can be sustained consist-
ently with the rules of law.   If it can not, it must of course
be reversed.

It will be seen that both classes of creditors had presented

their claims to the commissioners and they had been allowed and reported. The whole amount of claims thus allowed was $121,000; those of the first class $23,000, and those of the second class $98,000.

From the commissioners' report an appeal was taken by the first class of creditors, on the ground that the commissioners themselves ought to have made the distinction and allowed the preference. This court held that the commissioners were not authorized to do it, and in our opinion we intimated that it probably could be done by the court of probate if at all. (*Waterman's Appeal from Probate*, 26 Conn., 96.) Following this intimation, such a preference has been made by that court, and we are now called upon to decide if that proceeding is correct.

In the former case we held that the commissioners had no jurisdiction to inquire as to any priority of lien on the assets in the hands of the assignee; that their province was to examine all claims presented against the corporation and allow such of them as were proved to be legal and just, and if, as among the creditors themselves whose claims were allowed, there was any ground of priority or preference, it was an equity to be administered by some other legal tribunal. So far as the corporation was concerned we saw no difference between the two classes of creditors. It is true commissioners may in certain special cases inquire into the character or origin of debts, with reference to a preference, such as the expenses of the last sickness, state taxes, &c.; but even this they need not do, but may leave the probate court to make the inquiry and allow the preference as the statute directs. It is not their appropriate business to settle general equities among the creditors, much less the priority of liens and incumbrances on the property assigned. The allowance of the claims of these two classes of creditors by no means settles the question made in this case; nor does the inquiry at all attack the doings of the commissioners. Those proceedings are undoubtedly final and conclusive if not appealed from and set aside by the legal tribunal provided in such cases. The object of the present decree is different altogether. The

appellees here allow the commissioners' doings to be conclusive, and that the former decision of this court must stand unimpaired, and hence they insist that as there is a clear equity in their favor and as relief can be had no where else, it must be had in the probate court. This then is the question.

A reference to the facts as they stand on the record is sufficient to show that there is a clear and undoubted equity in the appellees' favor. They became creditors after the company was formed under the statute, by supplying it with goods from time to time as it needed them to carry on its regular business upon a professed capital of $200,000. But the appellants stand in no such position. They had large claims against Fales & Gray which they wished to make more safe and secure, and to that end formed a joint stock company, a sort of partnership with Fales & Gray, with a clear, unincumbered capital of $200,000, and the company at once assumed the debts. The company went on a short time and then failed and assigned, but not until they had received from the appellees and the class of creditors to which they belong, property to the amount of $23,000. Their capital, as we have said, was to be $200,000, but it turned out to be in fact but a small part of that sum, for there is but about $20,000 in the whole for distribution. We think that of this the appellants are not entitled to receive any part until the appellees are first paid in full. They themselves declared to the appellees and to all others, by their public proceedings, and especially their certificates left with the secretary of state and with the town clerk, that the company had a clear capital of $200,000. After this we think they can not deny it, or come in to carry off any portion of the capital to the prejudice of *bona fide* creditors. The injustice of such a course will be most apparent if we lay the stock company out of view and regard the appellants as partners assuming a corporate organization for their greater convenience. This we may do and we think ought to do in furtherance of justice and equity.

We come next to consider the question whether the court

of probate is the proper tribunal to afford relief. If relief is to be had at all we ought to be able to find some court which can afford it, for, if the law recognizes the claim as proper, it must be sustained somewhere, unless we admit that the provision made by the law for the administration of justice is inadequate and imperfect. We have already decided that the commissioners can not grant relief. A court of equity can not, for how can such a court interfere and direct what proceedings shall be had in the probate court? It has no power to that end. And besides it can not afford relief in any case where relief can be had elsewhere according to the established forms of law. A court of probate possesses higher power than a court of equity in the settlement of estates, for it is clothed with both legal and equitable authority for that purpose, and the current of our decisions has for many years tended strongly against allowing courts of equity to interfere in the settlement of estates. It is the often expressed determination of our wisest and most experienced judges, that the settlement of estates, whether in the hands of guardians, executors and administrators, trustees, assignees or others who receive their appointment from that court, should be confined to that court. Such business can there be done more expeditiously, conveniently and with less expense than in any other court, and at the same time with equal safety to the interests of all parties, since an appeal lies from that court to the superior court.

In *Bailey* v. *Strong*, 8 Conn., 280, the language of the court is very explicit and decided. The court there say: "The settlement and the entire settlement of estates appertains to the several courts of probate." The case of *Pitkin* v. *Pitkin*, 7 Conn., 307, is to the same effect. The court there say: "These courts are vested with chancery powers on all subjects within their jurisdiction, and can so mould and form their decrees as to do entire justice between all parties in interest."

The court of probate does not hereby in the least impeach the doings of the commissioners, as was claimed in the argument of counsel. Their doings we have already said are

final and conclusive; their report must stand unimpaired, and is the only evidence the law knows of the indebtedness of the estate. But here is a fund of some $20,000 subject to distribution by the order of the court, and how shall this distribution be made? Shall it be according to justice and equity, and with reference to the liens and trusts which adhere to it, or shall no regard be had to such equities? We have shown that the creditors of Fales & Gray have no equity in the first instance, and why may not the court act upon such a conclusion? We have heard but one argument to the contrary, and that has some plausibility, we admit, but will not bear examination when carefully examined. It is that our statute, (Rev. Stat., tit. 14, § 61,) directs that, after the payment of certain preferred claims, "all other debts shall be paid as allowed, in proportion to their respective amounts." But this does not, in our view, prescribe any new and arbitrary rule of action to the judge of probate. Without it the assets would have to go to the creditors in equal proportion, except such as had preference by statute, as in the case of expenses of the last sickness, &c. This equal distribution would be a matter of course, and now simply because it is made peremptory by statute we are not willing to carry the statute further and give it such a harsh construction as to cut off and defeat plain and admitted equities, and this, merely because the commissioners' report is final and can not be disputed. This court held in the late case of *Peck* v. *Harrison*, 23 Conn., 118, that although a debt is reported by commissioners to be due, yet if it is afterwards paid it may be expunged from the report by the judge of probate, so that in this instance the report was not the only and absolute rule of apportionment. Why then ought it to be in the administration of a fund subject to equitable liens and trusts. If the law permits it, and equity and justice demand it, why can not the judge discriminate between classes of creditors as to specific funds? We think he may.

The case of *Findley* v. *Hosmer*, 2 Conn., 351, cited by the appellant's counsel, contains no doctrine to the contrary. Nor does that of *Hotchkiss* v. *Beach*, 10 Conn., 232. In the

latter, a majority of the court put the decision on the ground that the attempt made called in question the commissioners' report; the minority thought it did not, and that the court was only called upon to administer equity between the parties. It does not appear to us that the majority denied or meant to deny the chancery power of the court, but only the propriety of exercising it in that particular case. Besides, it is well known to the profession that since that decision was made, our courts have been inclining towards the doctrine so ably asserted by Judge Williams in giving the dissenting opinion.

We will not pursue the subject further. All of us are satisfied that there is a clear and undoubted equity in favor of the appellees, and that the court of probate is competent, and the appropriate court to administer that equity, and that it has properly administered it here; and we advise accordingly.

In this opinion the other judges concurred.

Advice that decree of probate be affirmed.