JOSIAH J. WHITE ET AL. *vs.* THE TOWN OF PORTLAND.

First Judicial District, Hartford, January Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Section 3844 of the General Statutes provides that the estate of a deceased person, not distributed or finally disposed of by the Court of Probate, may be set for taxation in the name of such estate ; while § 3845 directs that where one person is entitled to the ultimate enjoyment of land and another to its life use, the land shall be set in the list of the party in the immediate possession or use thereof, except when it is specially provided otherwise. *Held* that real estate owned by and in possession of a tenant by the curtesy, should be listed in his name for taxation, even though at the time of the assessment the estate of his deceased wife was in process of settlement in the Court of Probate.

It is the duty of a tenant by the curtesy to pay all taxes upon the real estate owned by him as such tenant, which are lawfully laid after the death of his wife and during his tenancy ; his interest only, can be taken or subjected to a lien therefor, and he alone is personally liable for such taxes.

Under such circumstances, if the real estate is claimed to·have been improperly assessed or assessed in excess of its market value, the tenant by the curtesy alone is interested; and if the remainder-man unites with the life tenant in an appeal from the action of the board of relief, there is a misjoinder of parties which may be taken advantage of on demurrer.

Section 888 of the General Statutes provides that no action shall be defeated by the misjoinder of parties, but that parties misjoined may be dropped by order of court at any stage of the cause, as it may deem the interests of justice to require. *Held* that while the statute gave this power to the court, it was ordinarily to be exercised only on the request of the party and upon proper amendment of the pleadings; that the court could not compel the plaintiffs to drop the party misjoined, amend the complaint and continue the case; and that if they neglected or refused to avail themselves of their right in this respect, the court was justified in dismissing the action as against them both.

[Argued January 7th—decided February 21st, 1896.]

APPEAL from the doings of the assessors and board of relief of the defendant town, taken to the Superior Court in Middlesex County and tried to the court, *Robinson, J.*, upon the defendant's demurrer to the plaintiffs' reasons of appeal; the court sustained the demurrer and rendered judgment for the defendant, and the plaintiffs appealed for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*William L. Bennett*, for the appellant, (plaintiffs).

*John R. Buck* and *John M. Murdoch*, for the appellee (defendant).

TORRANCE, J.   This is an application for relief, under § 3860 of the General Statutes, from the doings of the board of relief of the town of Portland.   The town demurred to the application, the Superior Court sustained the demurrer and dismissed the case, and from that judgment the plaintiffs took the present appeal.

· From the facts alleged in the application, which are in effect admitted by the demurrer, it appears that the tax assessment in question was made in 1893 upon certain real estate, which the assessors of Portland set in the list of the "estate of Eliza T. White"; that she died intestate in October, 1891; that one of the plaintiffs, Josiah J. White, is the husband of the deceased Eliza T. White, claiming an interest· in the whole of said real estate as tenant by the curtesy; and the other, Frederick Hall White, is her only child and sole heir, claiming as such heir the remainder in said real estate.

The application further alleged, in substance, that said real estate had been improperly assessed, and assessed greatly in excess of its true market value; that application had been properly made to the board of relief for redress, which had been refused, and that the applicants were aggrieved by such action of said board.

Among the causes of demurrer was one for misjoinder of parties, and as that appears to have been well taken, and to be decisive of the present appeal, the discussion will be ·confined chiefly to that point.

This question arises principally upon the first paragraph of the application, which reads as follows: "That said Josiah J. White is the husband of the late Eliza T. White, who died intestate on the 23d day of October, 1891, leaving said Josiah J. White as tenant by the curtesy, and said Frederick Hall White as sole heir to the remainder, of certain real estate hereinafter mentioned and set forth, which said real estate is located and situate in the town of Portland, in said Middlesex County."

The defendant demurred, "because it is not alleged and does not appear that said J. J. White and Frederick Hall White are either tenants in common or joint tenants of the property set in the list of the estate of Eliza T. White."

The plaintiffs claim that the above paragraph of the application sufficiently shows that at the time of the acts complained of, Josiah J. White was tenant by the curtesy of all of said real estate and was in possession thereof as such ten-

ant, and that Frederick Hall White was the sole owner of the remainder interest therein; and that from this it follows that they can together bring this application.

If, for the purposes of discussion, the first part of this claim is conceded, it by no means necessarily follows that the plaintiffs can join in this proceeding. If under the circumstances disclosed by the record, it was the duty of the tenant by the curtesy to pay all taxes that might be assessed upon the real estate in question; if said taxes could only be collected from him, and only his property and estate could be taken, or subjected to a lien, therefor; and if the other plaintiff and his property could under no circumstances be made liable for such taxes, then it would follow that Frederick Hall White has no interest whatever in this proceeding, and is a mere stranger to the matters complained of; and that this is his true relation to the case appears to be quite clear.

As tenant for life, it was the duty of Josiah J. White to pay all taxes that might be laid upon this real estate after the death of his wife, and during his tenancy. " It may be laid down as a duty uniformly incumbent upon a tenant for life, to pay all taxes assessed upon the land during his life." 1 Washburn, Real Property, p. 126; Tiedeman, Real Property, § 68. " Tenants by curtesy hold their estates subject to the duties, limitations, and obligations, which attach to those of ordinary tenants for life." 1 Washburn, Real Property, p. 183.

Section 3845 of the Revised Statutes of this State provides that when, as in this case, the real estate is, as claimed by the plaintiffs, in possession of a tenant for life, and another person is entitled to the " ultimate enjoyment " of it, " such estate shall be set in the list " of the tenant for life in possession, " except when it is specially provided otherwise."

In this case it was the duty of the assessors, under this section, when they made out the list in question, to set said real estate in the list of Josiah J. White, and not in the name of the estate of Eliza T. White.

It is true, that § 3844 of the General Statutes provides

that the estate of any deceased person not distributed or finally disposed of by the Court of Probate, may be set in the list in the name of such estate, or of the administrator or executor; and § 577 provides that the executors and administrators of deceased persons during the settlement of the estate, shall have the possession, care and control of the real estate; but neither of these sections has any application to a case like the present, even if we assume that the estate of Eliza T. White was in process of settlement at the time of this assessment.

Section 577, by its own terms, is not applicable to real estate the life use in which belongs to a tenant by the curtesy; *Staples' Appeal from Probate*, 52 Conn., 421; and where the life tenant is thus in possession of the real estate, § 3844 is not applicable because of the express provisions of § 3845. Sections 577, 3844, and 3845 must be construed together, and when so construed, it is evident that the first two have no application in a case like the present.

Furthermore, from the fact that the real estate in question must be set in the list of the life tenant, it follows that he alone would be personally liable for the tax, and not the remainder-man ; all the ordinary means for collecting a tax by levy and sale of property, or by taking the body, could only be employed in such case against the life tenant.

Moreover, the statutory lien for such a tax would rest only upon the estate of the life tenant, and not upon the estate of the remainder-man ; for such is the express provision of § 3890 of the General Statutes imposing such a lien, which reads as follows : " The estate of any person in any portion of real estate which is by law set in his list for taxation, shall be subject to a lien for that part of his taxes which is laid upon the valuation of said real estate as found in said list when finally completed." This clearly imposes a lien for the taxes only upon such estate as the party has in the land, and not upon an estate which another may have in the same land.

It thus appears that it is the exclusive duty of the tenant by the curtesy to pay all taxes legally assessed upon the real

estate in question; that he alone is personally liable there-for; that only his property can be taken or subjected to a lien therefor; and that consequently the remainder-man has no right or interest which can be injuriously affected by any such assessment.

Clearly then, the plaintiffs have no such common or joint interest in the relief sought as will entitle them to join; for the remainder-man appears to have no interest whatever in obtaining such relief, and hence there was a misjoinder of parties.

" The *remedy* or redress, which the law affords in any given case, for the violation or deprivation of a legal right, belongs exclusively to him or them, *whose* right has been violated, or is withheld.   If then, the right of action is in *one* person only, another may not be joined with him, as plaintiff in the action.   For he whose sole right is violated, cannot by join-ing another person in his complaint, make the defendant lia-ble to a *stranger*."   Gould on Pleadings, § 52, p. 183.   The principle here stated is fully recognized by the Practice Act and is still operative.   *State of Conn.* v. *Wright*, 50 Conn., 580, 581; *Patterson* v. *Kellogg*, 53 id., 38.

The effect, however, of a misjoinder of this kind, under the Practice Act, is not necessarily fatal to the suit, as it generally was at common law; for § 888 of the General Stat-utes provides that " no action shall be defeated by the non-joinder or misjoinder of parties;" and that new parties may be added, and parties misjoined dropped, by order of the court at any stage of the cause.

Counsel for the plaintiffs in his brief makes the point that under this section, " either misjoinder is not a cause of de-murrer but a defect to be reached by motion; or if demurra-ble, the judgment should run against that party who is misjoined, while the cause of the party properly in court should be saved."   The claim is, in effect, that the court below erred in holding that this misjoinder could be reached by demurrer, and in rendering judgment against both plain-tiffs.

The fact that neither of these claims is stated in the

reasons of appeal, makes it unnecessary to decide them; but as they involve questions of some importance frequently arising in practice, it is deemed advisable to state briefly the views of this court upon them here.

In this State, prior to the adoption of the Practice Act, a demurrer would lie for misjoinder of plaintiffs, where such misjoinder appeared upon the face of declaration; Gould on Pleading, § 109, p. 256, and the Practice Act has, neither in terms nor by necessary implication, made any change in this respect. Whatever, then, may be the practice elsewhere, in this State a fault of the kind here in question may be reached by a demurrer.

With reference to the form of the judgment, the plaintiffs' real claim appears to be that it was the duty of the court of its own motion, and without, or independently of, any action or request of the plaintiffs, or even against their objection and protest, to drop the party misjoined, cause the application to be amended, and allow the case to proceed. Power is undoubtedly vested in the court to do all this, but this power ordinarily is to be exercised only at the request of the party, and not by the court of its own mere motion. It is the duty of the party, if he desires to have the party misjoined dropped, and the action to proceed, to request the appropriate action of the court, and to amend his application accordingly. The court cannot compel him to drop the party misjoined, and amend his complaint and go on with his case; it can only give him an opportunity to do so; but if he neglects or refuses to avail himself of the opportunity, the court is under no duty to force him to do so. In such case the court is justified in dismissing the action. When this is done the action is not "defeated" on account of the misjoinder, but because the party neglects or refuses to avail himself of the right which the statute gives him to avoid the misjoinder.

In the case at bar it nowhere appears that the plaintiffs wished to amend as to misjoinder, or to go on with the action after such amendment, or that the court prevented them from so doing. The case, then, was "defeated" be-

cause one of the plaintiffs did not avail himself of his rights under the statute, and the judgment properly ran against both.

In the view taken of the effect of the misjoinder in this case, it is unnecessary to discuss or decide the other errors assigned.

There is no error.

In this opinion the other judges concurred.