MAE CADWELL HAYWARD, INDIVIDUALLY AND AS
EXECUTRIX, ET AL., vs. HENRY B. PLANT ET AL.,
EXECUTORS.

Second Judicial District, Norwich, October Term, 1922.

WHEELER, C. J., BEACH, BURPEE, KEELER and JENNINGS, Js.

An ultimate conclusion of the trial court, deduced from subordinate
facts found proven by the evidence and detailed in the finding, is
reviewable by this court upon appeal; but such conclusion will
not be disturbed unless it violates some rule or principle either
of law, reason, or logic, or is contrary to or inconsistent with the
subordinate facts found.

In the present case the trial court held that the sums awarded the several
executors for their services in settling the estate, were "just, reason-
able and proper compensation." *Held* that this conclusion, while
reviewable, was not contrary to nor inconsistent with the sub-
ordinate facts found, nor did it violate any rule or principle of law
or reason, and therefore was final.

"Reasonable" compensation, in this connection, means what is fair
in view of the size of the estate, the responsibilities involved, the
character of the work required, the special problems and difficulties
encountered, the results achieved, the knowledge, skill and judg-
ment demanded of and shown by the executors, the manner and
promptitude in which the estate has been settled, and any other
circumstances relevant and material to this determination.

In this State the principles of unitary compensation, where there are
several executors or others acting in a trust capacity, has never
been adopted; nor does that method commend itself as practical,
wise or fair, or as capable of a reasonable determination by a court.
In a large and complicated estate the knowledge, judgment and
ability of each executor may be of especial value to the estate, and
the compensation of each should be awarded upon that basis.

The testator, whose estate inventoried over $33,000,000, with debts
and charges of about $16,000,000, including time loans of $7,000,000
secured by stock as collateral and maturing subsequent to his
death, appointed five executors with broad powers respecting the
continuance of his business enterprises, of whom three only were
active in the settlement of his estate. These three had been the
trusted advisers of the testator, were familiar with his affairs and
with general financial and business conditions, and by reason of
their skill, judgment and experience in different lines, were enabled
to surmount the difficulties and problems confronting them, and

Hayward *v*. Plant.

to save the estate from tremendous losses.  The wife and son of the testator did comparatively little of the work of settlement. After an extended hearing the Superior Court allowed, "as just, reasonable and proper compensation," to one of the executors $135,000, to two of them $120,000 each, and to the wife and son $30,000 each.  *Held* that these awards were not unreasonable upon the facts as found and set forth in the finding; nor were they in conflict with any rule or legal principle.

In the settlement of an estate, interest accruing on time loans secured by collateral is a charge against income from the date of the testator's death to the maturing of the loans, and is thus practically paid by the life tenant; while interest which accrued on such loans prior to the testator's death is a charge against principal, and is borne by the remainderman.

As a general rule a trustee cannot profit by the use of trust funds in his keeping, but it is not improper for the executors of a will to place the cash funds of the estate during settlement in the banking department of a trust company, of unquestioned financial responsibility and subject to State supervision, which is authorized by law to receive and care for such funds, merely because such trust company happens to be one of the executors; provided, however, that such company allows the estate, for the use of the money, a rate of interest as high at least as the prevailing rate of interest paid by trust companies on like deposits in that locality during that period.  Under such circumstances any balance earned by the trust company on the funds so deposited, belongs to it as its reasonable profit.

It is obviously of no consequence whether immaterial matters form part of a finding or not.

Where the subordinate facts are but partly stated in the finding, this court must take the finding as it is, and determine the correctness of the ultimate conclusion upon the facts therein stated; for this court has no power to retry the case upon the evidence.

Judicial discretion is always a legal discretion.  Its exercise will not be interfered with by this court on appeal, except where the discretion has manifestly been unreasonable and injustice has been done; or, stated in other words, the test is whether the court has acted so unreasonably as to constitute an abuse of discretion.

Argued October 17th, 1922—decided January 10th, 1923.

APPEAL from an order and decree of the Court of Probate for the district of Groton fixing and allowing the sum of $1,024,369 for the services of the executors in the settlement of the estate of the late Morton F. Plant, taken by the plaintiffs to the Superior Court in

New London County and tried to the court, *Brown, J.;* facts found and judgment rendered reducing the amount allowed to the executors to $435,000, and appeal by the plaintiffs. *No error.*

Morton F. Plant, the testator, died November 4th, 1918, leaving a will giving to the defendants, executors, very broad powers as to the continuance of the several businesses he was interested in, and as to his investments therein. His estate inventoried over $33,000,000, and up to the day of the hearing in the Superior Court over $36,000,000 of funds of the estate had passed through the executors' hands. The debts and charges of the estate were about $16,000,000, of which some $7,000,000 were time loans, secured by stock, notes and bonds as collateral, maturing subsequent to the death of the testator; the interest which accrued upon these loans after testator's death was $173,425. In their account the executors charged against principal the face of the notes given by the testator, and the interest thereon which accrued up to the date of his death; and against income the interest which accrued thereon from the date of his death to the time when said notes were paid. All the dividends paid upon the stock held as collateral after the date of Mr. Plant's death, and the interest received on said notes and bonds also held as collateral, which was earned after the date of Mr. Plant's death, was also credited to income. The testator authorized two or more of the executors and trustees of his will to act for all. At the first meeting of the executors it was voted that the business of the estate, for the present, be conducted by Messrs. Sullivan and Shearer and the United States Trust Company, and upon their failure to agree on any matter it should be referred to all of the executors before action should be taken. On February 5th, 1919, all of the executors, in pursuance of the power given in the will,

executed a written designation appointing Messrs. Sullivan and Shearer and the Trust Company, or either of the individuals with the Trust Company, to act for all. Thereafter, by virtue of this vote and designation, Messrs. Sullivan and Shearer and the Trust Company attended to all the various business matters of the estate, and were the more active executors. All of the executors met eleven times and discussed the affairs of the estate, heard reports of what the active executors had done and approved of the same, and all important matters were referred to the whole body of executors for final approval. The Trust Company had most to do with the custody and the transferring, upon sales, of the securities; Mr. Shearer with the legal matters, and Mr. Sullivan with the keeping of the accounts. Mr. Shearer was a member of the firm of lawyers, Stewart & Shearer, who were attorneys for the estate, but he did not share in any of the payments for the services of the firm to the estate, nor did the firm share in his compensation as executor. Mr. Sullivan was in the employ of the testator in his lifetime and was familiar with the conditions of most of the properties. The parties agreed that the court should fix the compensation of the executors from their appointment to the date of trial, November 29th, 1921, a period of about three years. Just, reasonable and proper compensation to the executors was as follows: to Mr. Sullivan, $135,000; to Mr. Shearer, $120,000; to the United States Trust Company, $120,000; to Mrs. Hayward, $30,000; and to Mr. Henry B. Plant, $30,000.

In determining the compensation of each executor, the court weighed and considered all the facts bearing thereon and all the evidence relating thereto, including the opinions of the expert witnesses. It took into consideration the gross amount of the estate, $36,271,-

814.82, which passed through the executors' hands; the time and effort expended by each executor; the difficulty and complexity of the problems dealt with, including the raising under most unusual financial conditions of between $16,000,000 and $17,000,000 to pay the debts; the broad powers and discretion granted the executors under the will; the manner of their exercise of the same; the results obtained, and all of the other circumstances and facts disclosed by the evidence. Of the five executors, the widow and son were not particularly qualified to administer this large estate. Mr. Sheldon, the president of the Trust Company, and Mr. Shearer and Mr. Sullivan were so qualified, and for years had been the testator's trusted advisers or business associates, and were familiar with the testator's business matters and financial problems, and also with general financial and business conditions. At the time when the will was executed and at the testator's death, many of his financial affairs were so involved that apparently only the intelligent exercise of such extremely broad powers as were given the executors under the will could have saved the estate from tremendous losses. The testator selected these three executors, counting on their collective skill, experience and judgment to solve these problems with the large amounts involved. The executors in their accomplishment functioned in the manner the testator contemplated they would. The greater part of the cash of the estate the executors deposited, in the name of the estate, with the United States Trust Company of New York, which allowed interest on the average daily balances at a rate of interest at least as high as the prevailing rate paid by trust companies in New York upon deposits during that period. By the laws of New York the United States Trust Company was required to, and did, keep 15% of all its deposits as

cash reserve. The Trust Company earned upon this account $1,832.66 for the entire period, after deducting the proportionate share of its expenses in carrying on its banking business which this account should bear. The average amount of daily balances to the credit of the estate in the account from November 22d, 1918, to January 1st, 1919, was $268,443; from January 1st, 1919, to January 1st, 1920, $1,525,366; from January 1st, 1920, to January 1st, 1921, $861,328; and from January 1st, 1921, to January 18th, 1921, $108,210.

*Walter C. Noyes* and *Hadlai A. Hull*, for the appellants (plaintiffs Mae Cadwell Hayward *et al.*).

*Lucius F. Robinson* and *Charles B. Whittlesey*, with whom was *W. A. W. Stewart* of New York City, for the appellees (defendants United States Trust Company *et als.*).

WHEELER, C. J. The appellants seek to correct the finding: (1) By having four paragraphs of the draft-finding added. As we read the evidence, none of these paragraphs, except perhaps the 13th, should have been added, and as its addition cannot affect the disposition of any of the questions raised by the record, it is immaterial whether it be in or out of the finding. (2) By striking out paragraphs 38, 39, 40, 41 and 42 of the finding, which recite the several awards made to the executors as "just, reasonable, and proper compensation" for their services as executors.

A conclusion of this character is an ultimate one drawn from many subordinate facts which the trial court finds from the evidence. If the conclusion, upon review in this court, be found erroneous in law, *it* may be modified or set aside. It will be erroneous if it is found in violation of some rule or principle of law,

or is in conflict with the rules of logic and reason, or is contrary to, or inconsistent with, the subordinate facts. In *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 159, 176, 39 Atl. 115, we speak of the review of an erroneous conclusion from subordinate facts as an error of law: "It [this principle] is not only supported by the true *ratio decidendi* of a long line of decisions, but is embedded in the very structure of our jurisprudence." In *Hyde* v. *Mendell*, 75 Conn. 140, 143, 52 Atl. 744, MR. JUSTICE HAMERSLEY, whose opinions have done much to elucidate this difficult question, wrote: "The error assigned, in effect, is that the trial court has erred in basing its ultimate conclusions as to the facts of negligence upon the specific facts set forth. Such a conclusion is reviewable when it appears that the trial court in drawing its inferences of fact from conceded, subordinate or evidential facts, has violated the plain rules of reason, or when some one or more of the facts found are legally inconsistent with the conclusions reached." *Bell* v. *Strong*, 96 Conn. 12, 112 Atl. 645; *Jordan* v. *Apter*, 93 Conn. 302, 305, 105 Atl. 620; *Seward* v. *Seward & Son Co.*, 91 Conn. 190, 193, 99 Atl. 887; *Meech* v. *Malcolm*, 88 Conn. 720, 726, 92 Atl. 657; *Lawler* v. *Hartford Street Ry. Co.*, 72 Conn. 74, 80, 81, 43 Atl. 545; *New Haven Rendering Co.* v. *Connecticut Co.*, 89 Conn. 252, 253, 93 Atl. 528. The conclusion arrived at by the trial court, of just and reasonable compensation for the several executors, was not made in violation of any rule or principle of law, nor of the rules of logic or reason, nor is it contrary to or inconsistent with the subordinate facts, so far as they appear in the finding or the memorandum of decision made a part of it. The subordinate facts from which this conclusion must have been drawn are obviously only partly stated in the finding. We have no right to add to these subordinate facts from the evi-

dence. We must take the finding as it is. If there is nothing in it which shows that this conclusion is contrary to or inconsistent with its facts, so far as they are found, we cannot strike it out of the finding. The finding of a conclusion such as the procuring cause of a sale, the reasonable value of service, the performance of a contract, the due care of a plaintiff and the negligence of a defendant—will of necessity ordinarily be preceded by a finding of various subordinate facts, and where the draft-finding shows that such a conclusion is to be attacked, the finding should state the subordinate facts from which the conclusion is found. Where the subordinate facts are, as in this case, partially omitted from the finding, we have no recourse save to determine this issue upon the facts as found. Instead of following the earlier form in our statement of the rule of review of a conclusion such as that before us, that it will he held erroneous if it conflicts with the rules of logic or reason, or be contrary to or inconsistent with the subordinate facts, we have not infrequently stated it in a shorter and perhaps more understandable form. Thus in *Maley* v. *Hugo,* 87 Conn. 323, 324, 87 Atl. 734, we say, in a *per curiam* opinion: "The defendant contends that the conclusions of the trial court are not warranted by the evidence, . . . and we are asked to correct the finding. This we cannot do if it appears that there was evidence from which the court below could have reasonably reached the conclusions complained of." A conclusion which is in violation of the rules of logic or reason, or contrary to, or inconsistent with, the subordinate facts, would be an unreasonable conclusion. It is in this sense we have held that we would modify or set aside a conclusion of the trial court which was unreasonable, that is, unreasonable in the light of the subordinate facts. *Bell* v. *Strong,* 96 Conn. 12, 112 Atl. 645; *Jordan* v. *Apter,* 93 Conn. 302, 305,

105 Atl. 620; *Munson* v. *DeTamble Motors Co.*, 88 Conn. 415, 419, 91 Atl. 531; *Atwood* v. *Atwood*, 86 Conn. 579, 581, 86 Atl. 29; *Stoughton* v. *Hartford*, 85 Conn. 674, 677, 84 Atl. 95; *Williams* v. *Clowes*, 75 Conn. 155, 160, 52 Atl. 820.

Ignoring our settled rule of procedure where a conclusion of the trial court is attacked, the appellants base their claim to a reduction of the compensation awarded these executors, upon the contention that these awards were excessive and constituted an improvident exercise of the judicial discretion, or, as this is designated in this jurisdiction, an abuse of judicial discretion. Unless the facts found by the trial court disclose this, we would be without power to determine it, for we cannot go to the evidence and retry the case. There is no occasion to introduce into our practice the review of an ultimate conclusion of a trial court for an abuse of judicial discretion. If we adopted this practice, we would reach the same point our present practice takes us to. A brief analysis of what is meant by an abuse of judicial discretion, will make this clear. Judicial discretion is always a legal discretion. Its abuse will not be interfered with on appeal to this court except in a case of manifest abuse and where injustice appears to have been done. *Wood* v. *Holah*, 80 Conn. 314, 315, 68 Atl. 323. The test is, has the court exercised a reasonable discretion, or, in other words, is its exercise so unreasonable as to constitute an abuse of discretion? *Hope* v. *Valente*, 84 Conn. 248, 255, 79 Atl. 583; *New Haven Water Co.* v. *Russell*, 86 Conn. 361, 370, 85 Atl. 636. If the exercise of the discretion had been made in reaching a conclusion based upon the subordinate facts in an arbitrary or illegal manner, or its end or purpose is not justified by the rules of logic or reason, or its deduction or conclusion cannot reasonably be drawn from the sub-

ordinate facts, this will instance an unreasonable exercise of discretion. The issue as to whether the compensation awarded for services should be reduced because the trial court has abused its discretion in fixing the award, resolves itself into a determination of whether, under the circumstances, the court has exercised its discretion in a reasonable manner. We thus necessarily reach the same point, whether the test is, as under our rule, did the court in its conclusion of what is just and reasonable compensation reach a reasonable conclusion, or, as the appellants desire, has the court in its conclusion abused its discretion and made an improvident exercise of it? Whatever the test, we cannot review the evidence to determine this issue. The appellants, by their motion to correct, could have had all of the subordinate facts which were omitted incorporated in the finding. The conclusion must be tested by the facts as found, and these, so far as they go, are not contrary to or inconsistent with it, and hence we cannot hold it to be erroneous in law.

The real purpose of the plaintiffs in the assignments of error so far discussed, is to have this court examine the evidence and retry the case in order to determine whether the awards of compensation to these executors are excessive. We quote from our opinion in *Thresher* v. *Dyer*, 69 Conn. 404, 408, 37 Atl. 979, as particularly applicable to this case: "Apparently the testimony certified fully justified the trial court in the conclusion of fact which it reached; but we cannot pass on this question. It is firmly settled by the decisions of this court that our jurisdiction does not extend to the retrial upon the testimony, of the facts, based on some evidence, on which the judgment of a trial court, proceeding according to the rules of law, is founded. And it is immaterial whether such retrial is sought under the claim that the court erred in reaching a conclusion

of fact from the testimony, or under a claim of error in law because a judgment, plainly valid upon the facts settled by the trial court, would be as plainly invalid if it had been rendered on different facts such as might be settled by this court after a retrial on the evidence. The thing actually sought, in either case, is a retrial of facts by an appellate court whose jurisdiction relates only to the correction of errors in law."

Error is predicated upon the separate award to each executor of just and reasonable ·compensation, upon the ground that the service of the executors was a unitary service for which a unitary award should have been made, and that the co-executors are entitled jointly to no more than one executor administering alone. The entire settlement of estates is committed to our Courts of Probate, and as a part of this duty these courts determine the award to be made to executors for. their compensation in estates settled in their districts. They, "as. to all matters within their jurisdiction, are clothed with chancery powers, so far as may be necessary to enable them to do full justice between the parties." *Mix's Appeal*, 35 Conn. 121, 123. The appellants suggest the rule of earlier days, and partly approved in *Kendall* v. *New England Carpet Co.*, 13 Conn. 383, 392, that, in the absence of statutory provision, compensation to an executor, guardian or trustee shall not be awarded except for "time and expenses." This has not been the rule in this State, certainly since *Clark* v. *Platt*, 30 Conn. 282. Under our law an executor, administrator, trustee or guardian is entitled to a reasonable compensation for his services, depending upon the circumstances of the case. *Main's Appeal*, 73 Conn. 638, 645, 48 Atl. 965; *Mathews* v. *Sheehan*, 76 Conn. 654, 57 Atl. 694; *Clement* v. *Brainerd*, 46 Conn. 174, 181; *Candee* v. *Skinner*, 40 Conn. 464. In this connection, "reasonable" means

what is fair in view of the size of the estate, the responsibilities involved, the character of the work required, the special problems and difficulties met in doing the work, the results achieved, the knowledge, skill and judgment required of and used by the executors, the manner and promptitude in which the estate has been settled and the time and service required, and any other circumstances which may appear in the case and are relevant and material to this determination. We have never adopted the principle of unitary service in fixing compensation for an executor or other person acting in a trust capacity. The practice in our Courts of Probate has been to award just and reasonable compensation for such service. No instance has arisen in this court where that practice has been questioned. Compensation to an executor or other person acting in a trust capacity, based upon a unitary service, does not commend itself to us as practical, or wise and fair, or as capable of a reasonable determination by a court. The service of each of several executors may be especially valuable to an estate. In a large and complicated estate, as this was, the combined knowledge, judgment and ability of each executor may be of especial value to the estate. The total service, if performed by a single executor, does not measure the services of several executors. Nor could the service of the single executor in the complicated estate ever be proved with any reasonable accuracy where several, in this case five, executors had served. It would always be necessary to prove the service of each executor if the court is to make reasonable compensation for the actual service of the several executors. In any event, the unitary compensation would have to be apportioned if the service of competent men was to be had, otherwise men of this character would often decline the service. And in the end the court must make the appor-

tionment, where the parties failed to. Just and reasonable compensation could not be awarded in this case unless separate awards were made to each executor, for the services of the several executors differed widely. Messrs. Sullivan and Shearer and the United States Trust Company did the great bulk of the work of the estate. They had been the trusted advisers of the testator, and were familiar with the testator's affairs and with general financial and business conditions. The difficulties and problems of the estate were manifold; the testator knew this, and selected these executors in order to secure their collective skill, experience and judgment in administering his estate, and in carrying out the broad powers conferred upon them by the will and in saving the estate from tremendous losses. These were the active executors, and they performed their duties in the manner contemplated by the testator. The widow and son of the testator were the inactive executors; neither was particularly qualified to administer this estate, and neither did a great deal toward this end. Just and reasonable compensation could not be awarded the several executors in case all were treated alike. Manifestly there should be a wide difference between the compensation of the active and the inactive executors, and the Superior Court, on this appeal, had full authority to determine this, provided it awarded to each no more than just and reasonable compensation. *Mack's Appeal,* 71 Conn. 122, 130, 41 Atl. 242; *Hall* v. *Pierson,* 63 Conn. 332, 342, 343, 28 Atl. 544; *Ashmead's Appeal,* 27 Conn. 241, 248; *Bailey* v. *Strong,* 8 Conn. 278, 280; *Pitkin* v. *Pitkin,* 7 Conn. 307. The trial court adopted and applied this rule to guard against the award of compensation for the duplication of service by the executors: "While it is doubtless true that no compensation should be given for duplicated service by executors that is not useful,

because it would *not* be reasonable to do so, all service, though the character of service was performed by more than one, when it *is* valuable, as was the combined knowledge, judgment and skill of these three for this estate, should be fully compensated because it *is* reasonable to do so. It is also equitable and reasonable that, where there are several executors as here, the compensation allowed be apportioned according to the services rendered by each." This rule is adequate to protect an estate against compensation to an executor for the improper duplication of service, and is as favorable to the appellants as they were entitled to.

Another ruling complained of is the holding that interest accruing on time loans by notes secured by collateral is a charge against the income of the estate from the date of death of the testator to the maturity of the notes. In the account filed the executors have charged to principal the interest which accrued prior to the decease of the testator, and to the income the interest which accrued subsequent to his decease. The amount involved is large, about $173,000, and if the contention of the appellants prevails, the remaindermen must pay this, while if the account filed stands, the life tenants, these appellants, must pay it. As a general rule, the life tenant of an aliquot part of the residue of an estate takes the income of such part from the death of the testator, subject to the payment of the debts, legacies and expenses of the estate. Under this general rule, we have held that the life tenant must pay the taxes accruing upon the life estate during its existence; *White* v. *Portland,* 67 Conn. 275, 34 Atl. 1022; and that he must also pay the expenses attendant upon its administration; *Wordin's Appeal,* 71 Conn. 537, 42 Atl. 659. It is also the settled law that he must pay for the ordinary repairs during the life estate. 2 Perry on Trusts & Trustees (6th Ed.) § 552. As to

payments for insurance, the authorities are not in accord. In the absence of provision in statute, will, or other instrument, they are in agreement in holding it to be the duty of the life tenant to pay interest upon incumbrances upon the estate from the decease of the testator. *Matter of Albertson*, 113 N. Y. 434, 21 N. E. 117; *Woodward* v. *James*, 115 N. Y. 346, 22 N. E. 150; *Peirce* v. *Burroughs*, 58 N. H. 302; *Reeves* v. *Huckins* (N. H.), 117 Atl. Rep. 263; *Kreuscher* v. *Roth* (Minn.), 188 N. W. Rep. 996; *Mendenhall* v. *Jackson*, 268 Pa. St. 123, 110 Atl. 799; *Todd* v. *First National Bank*, 173 Ky. 60, 67, 190 S. W. 468; *Upton* v. *Merriman*, 116 Minn. 358, 365, 133 N. W. 977; *Stroh* v. *O'Hearn*, 176 Mich. 164, 179, 142 N. W. 865; *Plympton* v. *Boston Dispensary*, 106 Mass. 544, 547; *Mosley* v. *Marshall*, 27 Barb. (N. Y.) 42; 17 R. C. L., § 29, p. 639. While these cases concern mortgages of realty, the opinions apply the rule to incumbrances generally. And the text-books treat incumbrances and debts under a common head. The rule is, that the life tenant is not chargeable with interest which accrued before he came into his estate. *Jones* v. *Sherrard*, 22 N. Car. 179 (2 Dev. & Bat. Eq.); 17 R. C. L., § 30, p. 640. None of the authorities which we have examined, except *Neide's Estate*, 22 Pa. Dist. R. 563, presents the exact case before us, that of time loans. Between it and the case of the incumbrance upon realty, there is no difference in principle. Each is a debt upon a note or bond, the one is secured by realty, the other by collateral. The income from interest on bonds or debts is deemed, in favor of the life tenant, to accrue from day to day, and so to be apportionable between the principal and income as of the time of the beginning or ending of the life estate. In *Greene* v. *Huntington*, 73 Conn. 106, 114, 46 Atl. 883, we say: "The borrower of money on interest payable semi-annually, is under an absolute

contractual liability, by virtue of which the interest is deemed, in favor of a life tenant, to accrue from day to day, and so to be apportionable in case of the death of the latter during any half year." A number of notes of this estate were not due at the decease of the testator, just as the note secured by mortgage is not due, but it is apportionable, and we know of no valid reason why the interest due upon the note secured by collateral should not be apportioned in the same manner between the life tenant and remainderman. The justice in enforcing such an apportionment is apparent. The income of the estate has been increased by these loans, since, presumably, their proceeds have been used to either add to its assets, or to diminish its indebtedness. If the life tenant has the income from the estate augmented by the proceeds of these loans and pays no part of the interest which has accrued during the existence of the life estate, he will be getting more than his part of the residue, for he will then get that and a share of the remainderman's interest. But if the interest is apportioned as of the date of the testator's death, he will pay the interest on the loans during the time he enjoys the income from the proceeds of the loans, and the estate will pay the interest during the time the testator enjoyed the income from the proceeds of the loans. This does exact justice to both life tenant and remainderman. Cases may be readily imagined where the rule contended for by the appellants would give to the life tenant far more than the share of the residue given him by the testator, and strip the remainderman of a large part, and perhaps the whole, of his bequest or devise. *Neide's Estate*, 22 Pa. Dist. R. 563, 564, presents the precise case we have for decision. The court well says: "The residue of the estate of the testator is that which he was possessed of at the time of his death, after payment of his debts and legacies

. . . ; and it is the income of that, and of that alone, that the life tenant can enjoy; and if, by reason of delay in settlement, a delay which she could have put an end to by demanding a settlement at the end of the year, income and interest are accumulated, it is but the net income, as it is but the net residue, to which she is entitled."

The final error which the appellants wish reviewed, is the overruling of their claim that the gross profit made by the United States Trust Company upon the funds of the Plant estate on deposit with them, should be deducted from the amount found by the trial court to be the just and reasonable compensation for this executor. The appellants in this connection asked to have the finding corrected by adding the total amount received by the Trust Company from the use of these funds, in excess of that which it allowed the estate. In our view of the matter it is immaterial whether this correction be made or not. The Trust Company deducted from the gross profits upon this deposit, its proportionate share of the expenses of its banking business, and credited to the estate the balance as the net profit earned upon this deposit. The amount thus credited seems very small, and the proportionate expense charged against this deposit, if the appellants' claim is correct, seems correspondingly large, but these matters are not before us upon this record. The trial court has found that it took into consideration the net profit credited by the Trust Company, in determining the compensation of the Trust Company. The appellants' proposition is that the trustee, having used this trust fund in its own business, must account for the entire gain from such use. There can be no question as to the general rule that a trustee must not profit by the use of the trust funds in his keeping. We think the situation here does not make this rule applicable.

The Trust Company is a corporation doing a trust and banking business in New York, and is authorized by the law of New York to have the care and custody of trust funds, and is subject to State supervision. Its duties as executor did not involve the care and custody of its cash funds in its banking department. Whether the executors should keep the funds in this company was, subject to the subsequent approval of the court, for their wise discretion. Since the Trust Company was responsible as executor for the safe-keeping of the deposits, it would have an added reason for carrying out the trust with solicitude, judgment and wisdom. Assuming that it paid the estate the full market price for the privilege of the use of these funds, and that its financial responsibility was beyond question, we think it was not improper for the executors to have entrusted to it—a fiduciary authorized by law to have the care and custody of trust funds—the deposit account of this estate. And we think, further, that the Trust Company could not be expected to take the custody and have the care and expense of this deposit, without the receipt of the earnings of the deposit over and above the payment to the estate of the market price of such a deposit. From these earnings it must pay the reasonable expense of its care and custody of the deposit. The balance belonged to it as its reasonable profit, as the custodian of the deposit, a position wholly apart from and unrelated to its duties as an executor. The union in one person of these unrelated positions, should make the executors and the Court of Probate particularly solicitous concerning the financial responsibility of this custodian and executor, and also concerning the amount paid for the use of the deposit. In this case no question has been suggested as to either of these matters. The court has found that the net profit to the Trust Company was taken into consider-

ation in fixing the compensation of the Trust Company as executor. If this means that this sum was deducted from the just compensation of this executor, we think it is a mistake. The Trust Company was entitled to all earnings on this deposit, as its custodian, over and above the amount it had agreed to pay the estate for such use, which in this case was the highest market price.

There is no error.

In this opinion the other judges concurred.

ANOTHER CASE—William H. Blodgett, Tax Commissioner, vs. United States Trust Company, *et als.*, Executors—like the foregoing case in its essential features, was tried with that case, and from the same judgment the plaintiff appealed. *No Error.*

*Carlos S. Holcomb,* with whom, on the brief, was *Frank E. Healy,* Attorney-General, for the appellant (plaintiff).

*Walter C. Noyes* and *Hadlai A. Hull,* for the appellants (defendants Mae Cadwell Hayward *et al.*).

*Lucius F. Robinson* and *Charles B. Whittlesey,* with whom was *W. A. W. Stewart* of New York City, for the appellees (defendants United States Trust Company *et als.*).

WHEELER, C. J. The companion case states the facts of this appeal and disposes of the errors assigned herein.

There is no error.

In this opinion the other judges concurred.