[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Andrew Hechtman, is the administrator of his mother's estate, the Estate of Arlene Savitsky. Actually, Mr. Hechtman had been named as the executor in his mother's last will and testament dated April 28, 1997. Mrs. Savitsky had married the defendant, Allan Savitsky, on August 21, 1985, some time after the death of her first husband. Prior to the marriage, the parties entered into an Antenuptial Agreement dated April 5, 1985. As far as it pertains to this case, it provided that neither party would be responsible for the other's debts before or after the marriage "unless both parties have agreed to assume the same."
After the parties marriage, they moved into Mrs. Savitsky's home at 130 Sunburst Road Bridgeport, Connecticut. Thereafter, on April 28, 1997, Mrs. Savitsky executed a will, the signifcant portion for purposes of this case read as follows:
"I give and devise my house and real estate located at 130 Sunburst Road, Bridgeport, Connecticut, together with all the furniture and furnishings located therein, to my son, Andrew Paul Hechtman, of Cheshire, CT Page 10043 Connecticut, subject to the right of my husband, Allan Savitsky, to live alone in the house for the rest of his life, and so long as he remains unmarried. I further direct that so long as my husband occupies said home, he shall be responsible for and pay all expenses relating to the use and maintenance of said house, which would include, but not limited to, taxes, insurance, utilities and repairs."
In the eighth paragraph of her will, Mrs. Savitsky deeds the rest, residue, and remainder of her estate to her son, the plaintiff herein. The will also incorporates the Antenuptial Agreement between the parties dated April 5, 1985.
Mrs. Savitsky died on June 19, 1997, and her son assumed financial responsibility. By November 17, 1997, he had commenced this action.
The complaint was amended more than once, and the operative complaint is dated March 11, 1998, with an additional amendment of the second count on December 16, 1998. The March, 1998 complaint is in four counts, although there is one First Count, two Second Counts, one Third Count. For purposes of clarity, the court will designate the second Second Count as the Third Count and the Third Count as the Fourth Count. So much for tidying up the pleadings.
In the First Count of the Complaint, the plaintiff claims Mr. Savitsky converted all of his mother's jewelry. In the Second Count, he claims that Mr. Savitsky has failed to turn over to him a list of household furniture and furnishings, as specified in the complaint, he is entitled to under the residuary clause of the will. In the newly designated Third Count, the plaintiff claims Mr. Savitsky has been negligent as life tenant for failure to pay utility bills on the house and failure to pay interest on a home equity line of credit obtained by Mrs. Savitsky on May 24, 1995. In the new Fourth Count, the plaintiff has accused the defendant of waste of the real estate by failure to pay the same utility bills and interest purportedly.
Let it be clear that Mrs. Savitsky before and after her marriage to the defendant was the sole owner of 130 Sunburst Road in Bridgeport. She alone applied for and signed the mortgage deed dated May 24, 1995. The defendant signed no document in relation to that transaction. During the marriage, Mrs. Savitsky paid any CT Page 10044 and all interest payments on this obligation. There is no evidence that Mr. Savitsky ever assumed that obligation or agreed to be bound by it.
As far as the First Count is concerned, it is clear from defendant's exhibits A and B that 134 items of jewelry were turned over to plaintiff's counsel in January of 1998. The plaintiff is apparently still making a claim for one bracelet he claims his mother owned. The defendant testified he has no knowledge of this bracelet and does not have it.
Judgment may enter for the defendant on this count. It is troubling to the court that despite filing amended complaints in March and December of 1998, the plaintiff never amended the First Count to reflect his receipt of 134 items of jewelry from the defendant.
As far as the Second Count, the plaintiff claims a long list of household furniture and furnishings that were either in his mother's house in 1985 or were replaced thereafter that he claims he is entitled to under the residuary clause. The court does not agree except for the check for $696.00 reflecting unpaid vacation pay. As to the balance of the items, with the exception of his bedroom furniture, judgment on that count may enter for the defendant. The decedent's will gave and bequeathed the home, real estate, household furniture and furnishing to the plaintiff subject to the life use of the defendant. Any fair reading of that language leads to the conclusion that the defendant was given the life use of both the house and furnishings. Such an intent can also be found in Paragraph 7, Page 5, "Residence of Arlene", of the Antenuptial Agreement (plaintiff's exhibit 1) which was incorporated into Mrs. Savitsky's will wherein she and her husband agreed that the residence that they moved into and in which she gave him a life use "will be fully furnished."
In addition, the court finds that the treadmill, freezer, patio furniture, a television, VCR and television stand, as well as all furniture in the master bedroom, a television set and stand in the kitchen as well as a loveseat, chair, ottoman, two glass tables, two table lamps and one floor lamp in the den were purchased by the defendant and were not replacements for furnishings in the premises before he moved into the Sunburst Avenue property. In particular, the defendant testified that his wife did not want to use the bedroom set she had used with her deceased husband and that it was removed before he moved into the CT Page 10045 premises.
The defendant does not claim the items contained in paragraph 10(B) of the Amended Second Count comprised of the plaintiff's bed, dresser and desk as well as a number of "pictures and things like that" that he has put aside and which the plaintiff may pick up at a mutually convenient time.
In regards to paragraph 11 of the Amended Complaint dated December 16, 1998, the defendant is ordered to pay over to the estate the sum of $696.44, representing accrued vacation pay due the testator at the time of her death.
In regard to paragraph 10(H) regarding "collectibles", the court finds the plaintiff has not met its burden of proof to establish what items, if any, he is entitled to.
The court will treat the newly designated "Third Count" and "Fourth Count" of the Amended Complaint together because they accuse the defendant of negligence and waste by his failure to pay utilities and interest on a home equity line of credit secured by a mortgage on the subject premises taken out by Mrs. Savitsky in May of 1995. No evidence was offered as to any nonpayment of utilities, and the court will treat that as having been waived.
As has already been stated, Mrs. Savitsky executed a Last Will and Testament on April 28, 1997, wherein she gave her husband a life use of the 130 Sunburst Road property directing that he be responsible "for and pay all expenses relating to the use and maintenance of said house which would include, but not be limited to, taxes, insurance, utilities and repairs." In the final paragraph of her will, she incorporated the terms of the Antenuptual Agreement executed by her and the defendant on April 5, 1985, some time before their marriage in August of 1985.
Under ordinary circumstances and unless a contrary intent is evidenced by another instrument, a life tenant does have an obligation to pay interest payments on a mortgage debt secured by the subject property of the life estate. Hayward v. Plant,98 Conn. 374, 387 (1923). The plaintiff claims that the intent of the testator is clear from the words used to create the life estate making the life tenant responsible for expenses for use of the premises. If the only factor the court was utilizing to determine her intent was the clause in the will creating the life CT Page 10046 estate, the plaintiff might be right. However, that is not the case. The Antenuptial Agreement provides:
 "Parties to this Agreement desire that neither of them shall be responsible for the debts of the other which might have accumulated to the time of signing of this Agreement, nor for any debts contracted hereafter unless both parties have agreed to assume the same. (Emphasis added.)
It is clear from that language which was incorporated into the will that Mrs. Savitsky was the only one responsible for that obligation and the defendant never assumed it. The only way the testator could have changed that clear expression of intent was to specifically include the word "interest" within Article Third of her will, which she did not.
The court further opines that there is a distinction between a mortgage situation where the proceeds of the mortgage were used directly to acquire the subject property. That is not what we have here. In this case, the testator applied for and received a home equity line of credit from People's Bank in May of 1995 in the amount of $50,000. Although there was no testimony as to what she did with the money, it appears that she did borrow $31,000 on the credit line for whatever she saw fit to do with the money. The court is well aware that people borrow money on home equity lines secured by a mortgage so that the interest payments are deductible for income tax purposes. This secured loan is no different from any unsecured loan Mrs. Savitsky would procure subsequent to her marriage, and the clear intent of the Antenuptial Agreement was that Mr. Savitsky would have no obligation for it. That intent is further established by the fact that Mrs. Savitsky paid all interest payments until the time of her death.
For the foregoing reasons, judgment will enter for the defendant as to Counts three and four.
The file discloses the existence of a Third Party Complaint and Counterclaim against the plaintiff essentially asking that he be determined responsible for the mortgage interest. No mention of this was made during the trial, and neither party mentioned these pleadings in their briefs. In light of the court's decision on the merits, the court will determine that those pleadings have been abandoned. CT Page 10047
GORMLEY, J.