### D. I. Jarrett, administrator, etc., v. William M. Johnson, et al.

#### Gen. No. 11,346.

1. ACCOUNT RENDERED—*effect to be given to. upon accounting.* Where a trustee in his statement of account has charged himself with having received the equivalent of a specified amount in cash, upon an accounting against him, it is proper to charge him with having received such amount in cash.

2. TRUSTEE—*when, properly chargeable with profits appropriated.* Where a trustee by reason of his relations to the trust was enabled with his own funds to embark in an enterprise from which he received profit, he is properly chargeable with such profit and may be required to turn over the same, together with the corpus of his investment, after allowing to him the amount invested by him plus interest at the legal rate.

3. TRUSTEE—*when, entitled to compensation.* Where a trustee enters upon the performance of the duties of his trust without special

Jarrett v. Johnson.

arrangements for compensation, devotes his time thereto, invests his capital therein, and makes a success thereof, he is entitled to a reasonable compensation for the services rendered.

4. TRUSTEE—*what essential to enforce forfeiture of compensation of.* In order to enforce a forfeiture of a trustee's compensation, it is essential that it be shown that he has neglected his duties, exercised bad faith, or has in some wise committed a breach of his obligations, and the facts in either case must be clearly established.

5. CLAIM AGAINST ESTATE—*when, properly allowed as of the sixth class.* A claim against the estate of a deceased person is properly allowed as of the sixth class where it appears that the same is for money received by the deceased upon an express trust and was not accounted for by him.

Bill for accounting. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed October 25, 1904.

**Statement by the Court.** Appellee Johnson filed his bill of complaint against Peter F. Kaehler, in his lifetime, for an accounting. The bill of complaint alleges that John Mayer and Lewis R. Towle, doing business as Mayer & Towle, operating a brickyard, became indebted to Peter F. Kaehler, now deceased, and other persons; that Kaehler commenced an attachment suit and levied on the personal property of Mayer & Towle; that subsequently an agreement was made whereby Kaehler agreed to dismiss the attachment suit and a bill of sale was made conveying the personal property of said firm to Kaehler as trustee; that this bill of sale was accompanied by an additional agreement wherein it was agreed that after the indebtedness to Kaehler shall be fully paid and satisfied, including his reasonable costs, expenses and compensation for his services at the rate of $10 a week, he will thereafter hold and sell said property as trustee for parties named, and the proceeds of the sale of the property shall thereafter be paid to appellee Johnson representing other creditors; that Kaehler is not to be charged any rent for the real estate; that no personal liability is to be incurred by him; and that attached to the agreement is a list of claims against Mayer & Towle amounting to $8,315.75.

It is further alleged that Kaehler entered into possession of the real estate and personal property and that as no advantageous sale of the property could be made it was proposed that he engage in the manufacture of brick, applying the proceeds in the same way as by the agreement the proceeds of the sale of the property were to be applied. It is charged that Kaehler proceeded to and did manufacture two millions of brick which he sold at a profit; that he rendered an account subsequently showing that he had run the business at a loss. It is alleged in the bill that he charged excessively for feed, that he failed to discharge his trust, and an application was made for the appointment of a receiver.

The answer of defendant admitted the execution of the agreement mentioned in the bill of complaint. He states that he engaged in the manufacture and sale of brick at the request of the complainants; that it was agreed he should furnish the necessary capital and should receive a reasonable compensation for his services and for the use of his capital and that he was required to lay out a large sum of money in equipping the plant and repairing the machinery. He states that the business was run at a loss of $1,850. He admits that he has disposed of certain of the property and states what he received for it and that he rendered a just and true account when requested before the filing of the bill herein. He denies that he has charged unreasonably for his personal services and further denies that he made any charges in excess of his actual expenditures. He further states that no part of the original indebtedness to him has been paid.

Upon the hearing the court entered a decree finding among other things that before any of the personal property other than the brick on hand at the time Kaehler took possession of the premises had been sold, Kaehler, with the knowledge and consent of the respective parties, began the manufacture of brick, it being understood that the net proceeds of such manufacture and sale were to be applied and divided in accordance with the original agreement above

referred to; that in November, 1897, while Kaehler was in possession of the brickyard and personal property, a corporation known as the Cook County Brick Company was formed to promote the financial interests of brick manufacturers; that Kaehler became a member, subscribing for nine shares of stock, paying therefor the sum of $225 out of his own money; that he executed a lease to the Cook County Brick Company of the premises occupied by him under the bill of sale and agreement referred to at a rental of $1.00 per annum, taking back from the brick company a lease of the same at a rental to be computed at the rate of $1.50 per thousand of brick manufactured on the premises. The decree finds that the Cook County Brick Company earned large profits and paid Kaehler as dividends upon his shares the sum of $1,012.50 and that afterwards said brick company attempted to cancel the membership of said Kaehler, who sued the company to compel the payment of the balance of the dividend earned on his stock, and as a result of the litigation said brick company paid Kaehler $6,000.    The decree further finds that prior to the filing of the bill of complaint, upon the demand of appellee Johnson, Kaehler rendered an account showing receipts and disbursements in connection with the brickyard, containing, however, no mention of the dividends received from the brick company, but charging $30 per week for his services and the use of his capital in operating the brickyard; that Kaehler received the property described in the bills of sale as trustee for the purpose of paying his own claim and that of other complainants as provided by the terms of said agreement; that all moneys and profits received by him from the use and sale of said property, including the money received from the brick company, were likewise received by him in trust for the uses and purposes specified in the same agreement; that Kaehler was indebted to appellee in the sum of $2,572.85; that pending the suit Kaehler had died intestate, and the administrator of his estate was ordered to pay to complainants or their solicitor the sum found to be due from said estate as above men-

tioned in due course of administration as a claim of the sixth class. From this decree the administrator appeals.

JOHN J. McDANNOLD and D. E. SULLIVAN, for appellant.

JOSEPH H. FITCH and WILLIAM M. JOHNSON, for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that the decree is erroneous, first, in charging the estate of Kaehler with the full trading value of certain machinery disposed of by him for which he appears to have received two notes secured by trust deed on real estate, which trust deed he foreclosed, acquiring title to the land. He also received four additional lots conveyed to him by warranty deed, the consideration therefor being $500, the total amounting to $1,400. It is contended that the cash value of the machinery in question was only $750 and that it was improper to charge him with more than that, merely because the land which he received in exchange for said machinery was nominally valued at $1,400; that appellees were either entitled to the value of the machinery or that they could take the securities in real estate which he received therefor, but that he could not be properly charged with the value of the real estate and securities received by him, there being no proof in the record as to what such value was. It appears, however, that Kaehler himself stated in his testimony that the property he received in exchange for the machinery was valued at $1,400 and that in a supplemental statement bringing the account down to August 25, 1899, he charged himself as debtor to the estate for the proceeds of the sale of this machinery in the sum of $1,400. Under these circumstances, Kaehler having fixed the value of the property which he received at that sum and charged himself with that amount as cash received, there was no necessity of introducing testimony to show the value of the real estate in question. Having charged himself in his own statement of account with having received the equivalent of $1,400 in cash, it was entirely proper to take him at his word and charge him with that amount as was done.

Jarrett v. Johnson.

Second.   It is further contended in behalf of appellant that the court erred in disallowing a charge of $610 made by Kaehler for compensation for his services.   The original agreement provided that Kaehler should receive compensation at the rate of $10 a week for his services and in his account he credited himself with $610 as compensation, in accordance with the provision of the contract, for a period of sixty-one weeks.   Objection was made, however, in behalf of appellees to this allowance, as well as to any other allowance for compensation, upon the ground that Kaehler had forfeited all right thereto by his own misconduct as trustee.   If he was entitled to any compensation at all he was entitled to the sum provided for in the contract and this item of $610 should have been allowed.   But in addition to this contract compensation he claimed to be entitled for services and the use of his capital while operating the brick plant to a sum equal to $30 per week, amounting to $1,830.   An objection by appellees to the allowance of this last item was overruled.   There is testimony apparently uncontradicted tending to show that the services rendered by Kaehler and the use of his capital in operating the brick plant were worth at least $50 per week.   If in addition to the $1,830 allowed by the decree, Kaehler should receive the contract compensation of $10 per week which the court disallowed, his total allowance for services would be $40 per week for sixty-one weeks.   It appears from Kaehler's testimony that he had $5,000 invested in the business in addition to what was due him from Mayer & Towle.   It is not seriously contended that if he is entitled to any compensation at all the amount demanded by him was excessive.   He was by verbal agreement with appellees running a brick business which had been a failure previous to the time when he took possession of the premises and property. Under his management the property was made to pay not only the indebtedness to him, for which it was pledged, but to leave a balance to be applied upon payment of the claims of the other creditors.   If it was intended to reduce his total compensation to the sum of $30 per week, the

deduction should have come out of the item of $1,830 claimed by him as special compensation under an agreement with appellees for his services in operating the brickyard. An objection to this item was overruled, which was equivalent to finding that Kaehler was entitled to the sum of $30 per week for his special services in running the brickyard over and above the contract compensation. Unless, therefore, Kaehler was not entitled to receive any compensation for services by reason of misconduct, the item of $610 ought to have been allowed under the contract.

Third. It is claimed in behalf of appellant that it was error to charge Kaehler with the proceeds received from his stock in the Cook County Brick Company. The argument is that inasmuch as Kaehler bought said stock with his own money it was his individual investment and that the dividends received from said stock were his personal property in which the trust estate had no interest and which it was not entitled to receive any portion of. It appears that in December, 1897, the Cook County Brick Company was organized for the purpose primarily of uniting brick manufacturers so as to put an end to alleged ruinous competition and enable them to receive better prices for the product of their manufacture. Kaehler was allowed to enter this combination and become a stockholder solely because he was in possession of the brickyard and the personal property connected with it, under the agreement with appellees. Whatever advantage, therefore, he derived from the company accrued to him by reason of his possession of the property in controversy. While it is true that he advanced his own money for the purchase of said stock, at the same time he undertook the manufacture of brick for the benefit of the estate in his charge. The small price he paid for the stock was by no means the substantial consideration therefor. The real consideration was the use of the brickyard by the combination. It is true that the existence of the brick company enhanced the price of brick so that he was able to dispose of what he manufactured at a valuation profitable

Jarrett v. Johnson.

to the estate; but it is also true that the dividends paid upon the stock standing in his name were made up out of the earnings of the separate brickyards controlled by the company, one of which was that operated by Kaehler. By the arrangement with the brick company each stockholder who sold a thousand bricks paid the company a certain specified sum for each thousand, and the company paid these profits in the shape of dividends to those owning or controlling brickyards. There can be no question, in our judgment, that the dividends from the brick company were held by him for the benefit of the estate in his hands to the same extent and in the same manner as the property by the use of which they were earned. It was not the money actually paid for the stock of the concern, a very small amount in itself, from which Kaehler derived dividends of several hundred dollars a month, but it was from the control of the trust property held by him under the agreement. There was no error, therefore, in requiring Kaehler to account for the dividends received by him as was done in the decree complained of. This amount is shown to have been $3,678, after deducting all that Kaehler expended, including the $225 with interest thereon, which he had expended in the purchase of the stock. This is not a case where, the trustee having made use of funds in his hands which had become mixed with his own so that the profits cannot be accurately determined, the rule has been applied in accordance with which he is required to return the money with compound interest, as in the case of Lehman v. Rothbarth, 111 Ill. 188 (159 Ill. 270). The rule enforced in that case has no application here. White v. Sherman, 168 Ill. 589; Sherman v. White, 62 Ill. App. 271.

Fourth. Cross-errors have been assigned in behalf of appellees to the effect that the court erred in allowing Kaehler compensation for his services and in overruling the exceptions to the master's report in that respect. It is contended that under the rule by which the services of a trustee, in the absence of provision for compensation in advance, are to be gratuitously performed (Cook v. Gilmore,

133 Ill. 139–143), Kaehler was not entitled to any compensation other than that provided for in the trust agreement at the rate of $10 per week, and that even this was forfeited by his alleged misconduct as trustee. It appears that at the time the verbal arrangement was made in accordance with which Kaehler undertook the manufacture of brick, nothing was said about his compensation, although he claimed that afterwards the matter was considered between himself and appellee Johnson, representing appellees. This arrangement was outside of and subsequent to the original trust agreement, which provided merely for the disposition of the property. Afterwards all parties agreed that it was for the common interest that Kaehler should undertake the manufacture and sale of brick. There was, it appears, clay enough on the ground to manufacture several millions of brick, which could be utilized in this way for the benefit of the estate. Appellees were entitled to have the profits so applied, including, as we have said, the dividends on the brick company stock. But it does not follow, as appellees' counsel seem to argue, that Kaehler was obliged to use his own capital and carry on a business requiring constant supervision and control, the employment of a large number of men and the expenditure of considerable sums of money, and take all the risk himself, and receive no compensation for his services in that particular enterprise, unless he so agreed. While it is true that he was holding the brickyard and other property for the benefit of himself and other creditors under the trust agreement, yet in manufacturing brick he was acting outside of the trust agreement in a way not contemplated by that agreement. He agreed that the proceeds of the manufacture should be treated as part of the trust fund and it must be so treated. It would be unreasonable, however, to require him to risk his capital and put in his time and service in the conduct of a manufacturing enterprise for a considerable period of time, an enterprise which had been a failure in the hands of the original owners of the property, and receive nothing whatever in return for all this extra

labor not called for by the original agreement, except what he would have received as compensation for the sale of the property without undertaking such additional responsibility. It is true that except for the fund realized by such manufacturing he might not have received enough from the mere sale of the property to make himself whole in accordance with the original agreement; but to' say that for that reason he is to invest his capital and employ his own time and labor in an enterprise which has resulted in profit to the appellees without any compensation for his services other than the payment of the original indebtedness to him would be in the highest degree inequitable and ought not to be done by a court of equity unless under the law no other alternative presents itself. We are unable to find any legitimate foundation for holding that the services of Kaehler in the conduct of the manufacturing of brick in the yard are to be treated as the services of a trustee, merely because the proceeds of such manufacture became properly a part of the trust fund.

Fifth. It is, however, contended that Kaehler as trustee forfeited all claim to any compensation whatever, even the $10 a week stipulated in the contract, because he treated the dividends paid on his stock in the Cook County Brick Company as his own personal property instead of as a part of the trust fund. We are unable to concur in this contention. We have examined the testimony with care and find it insufficient to warrant the conclusion that Kaehler did not honestly believe himself entitled to these dividends upon stock which he contends was purchased with his own funds. While it is true that a trustee may not recover fees or commissions for his services where he has neglected his duties, exercised bad faith in the conduct of his trust, or committed a breach of his obligation, such facts must be clearly shown in order to justify depriving him of his fees or commissions legitimately earned in the performance of his duties, and it must appear that he acted in bad faith as a trustee. Such finding is not warranted by the testimony in this case. It is argued that because certain of his

charges which it is claimed were exorbitant and improper have been disallowed, his bad faith is thereby determined. There appears, however, to have been a legitimate contest and difference of opinion over the items referred to and we find in them no reason which would justify a court of equity in holding that Kaehler was not entitled to the contract compensation agreed to be paid him as trustee.

Sixth. It is further contended by appellant that the trial court erred in providing by its decree that the amount due appellees should be allowed as a claim of the sixth class against Kaehler's estate. The statute provides that "where the decedent has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for." It is urged by appellant's counsel that this provision applies only to express trusts, and that the most to be said of the dividends received by Kaehler from the Cook County Brick Company is that they were received and held by him, not under the express trust created by the written agreement between the parties, but outside of that agreement under a constructive or implied trust. Kaehler received the property, which he had previously attached, under a bill of sale from the attachment debtors accompanied with a written agreement defining expressly the terms of the trust thereby created. He took the property primarily to pay his own debt and after that was done he held all that remained as trustee for the creditors named. The dividends from the brick company were derived from a use of the property expressly agreed upon between the parties, the proceeds to be applied for the purposes of the trust. The amount found due is therefore payable out of his estate as a claim of the sixth class as the decree properly provides. Deiterman v. Ruppel, 200 Ill. 199–200; Darling v. McDonald, 101 Ill. 370–377, 378; McCall v. Lee, 120 Ill. 263–266.

The decree of the Circuit Court is correct therefore, except as to the disallowance of the $610 covering Kaehler's compensation in accordance with the written agreement..

This sum will be deducted from the amount found due from Kaehler's estate by the decree, which will be in all other respects affirmed.

*Affirmed.*