Desmond, J.
The will of Leon Schinasi who died in August, 1930, disposed of an estate of about $5,000,000. The principal assets, including real property then worth about $2,700,000, were held by testator’s solely owned Schinasi Commercial Corporation, the dissolution of which was commanded by the will. Dissolution was accomplished in July, 1931, and title to the real property went to the executors. The executors were the widow, a brother-in-law of testator, two children of testator and respondent Bankers Trust Company. The trust company and the widow were named in the will as trustees of so much of the estate as would produce a life income of $60,000 net per year after taxes for the widow but since the whole net estate was insufficient to throw off that much income the whole of it went into that trust. By the will’s terms the widow and children were to have no compensation at all for their respective services as executor or trustee but the brother-in-law was to receive the fixed sum of $10,000 in lieu of the usual executor’s commissions. As to the trust company’s compensation, paragraph Seventeenth of the will said this: “ Seventeenth: * * * The above designation of Bankers Trust Company as an Executor of and as a Trustee under this my Last Will and Testament is made upon the condition that, and shall be effective only if, the said Bankers Trust Company shall agree that as to said estate the commissions for the receipt and disbursements of principal and income thereof payable to said Bankers Trust Company shall be at the rate of one and one-half percentum upon said principal and said income; and that as to said trust funds the commissions for the receipt of income therefrom payable to said Bankers Trust Company shall be at the rate of one and one-half percentum upon said income and the commissions for the receipt and disbursement of principal thereof payable to said Bankers Trust Company shall be at the rate of one percentum upon said principal, payable at the termination of each trust. If the said Bankers Trust Company shall fail to accept said appointment as Executor upon the conditions aforesaid, the Surrogate’s Court of New *27 York County shall appoint a Trust Company to act as such Executor in its place, such appointment to be made, if possible, of a Trust Company which will agree to act as such Executor under and subject to the conditions hereinabove in this paragraph set forth.” Those prescribed percentages which were less than those allowed by former section 285 of the Surrogate’s Court Act then in effect have been regularly taken by the trust company and we are not directly concerned with them.
The dispute we deal with is as to whether it was lawful for the trust company between 1931 and 1945 to collect about $110,000 additional for its services in collecting the rents of and managing the real property which came into the estate on the dissolution of Schinasi Commercial Corporation and which became part of the trust estate. Former section 285 of the Surrogate’s Court Act (supra) was headed: “ Commissions of executor, administrator, guardian or testamentary trustee ” and most of it is taken up with stating the percentages allowed to such a fiduciary for his services as such. But the same section contained this closing sentence also: “ Where a trustee or executor is, by the terms of the instrument, required to collect the rents and manage real property, he shall be allowed and may retain, five per centum of the rents collected therefrom, in addition to the commissions herein provided ”. There is in the briefs here much finespun reasoning as to whether that last paragraph authorized additional “ commissions ” or mandated an allowance of some other sort. We point out that all the percentages scheduled in the statute are for services of an executor or trustee as such and that while the section is entitled “ Commissions * * * ” none of the listed percentages are separately labeled in the body of the section as “ commissions ”. The common sense of it is that the whole section fixes, limits and commands the payment of compensation for the services of an executor or trustee in his official capacity and that the 5% compensation on rents is of the same nature as the other percentages but is allowed in addition thereto when the nature of the assets makes necessary such additional services of an executor or trustee. The added fee on rents is a true commission for official services of the fiduciary (see Matter of Brennan, 251 N. Y. 39, 41; Matter of Wendel, 273 N. Y. 532; see Point V-A in appellants’ brief in this court; Matter of Schinasi, 277 N. Y. 252, 263, 264; Matter of Smathers, *28 309 N. Y. 487; 34 C. J. S., Executors and Administrators, p. 1027; 90 C. J. S., Trusts, p. 733).
As soon as it had qualified as a coexecutor the trust company took charge of the realty management including rent collections. On three interim accountings in the Surrogate’s Court (in 1933, 1938 and 1945) it asked for and was allowed, in addition to the reduced-by-will commissions, 5% on the rents. It seems to have been taken for granted by all the parties on those accountings, including learned and experienced special guardians for infant beneficiaries, that the trust company by accepting appointment at the will’s reduced compensation did not agree to forego the additional 5% required by this statute to be paid to executors and trustees for realty management. The trust company has since the latest of those three accountings continued to take the fees on rents (increased to 6% in 1949 or about $7,000 per year on this trust; see Surrogate’s Ct. Act, § 285-a).
But all this time, unknown to the widow or other beneficiaries, unknown to the attorneys for the estate, unknown to the trust company’s own legal counsel and not disclosed to court, counsel or parties during any of the accounting proceedings, there existed a letter, the discovery of which in 1950 led to this litigation. Addressed to this testator, signed by the trust company’s chief trust officer, dated on the same day the will was executed, this is the letter:
“ February 11, 1930
Mr. Leon Schinasi
2 East 57th Street
New York City
Dear Mr. Schinasi:
Deferring to our conversation when we had the pleasure of your visit here today, we shall be glad to act as Executor and Trustee under your Will, which I understand has just been executed and appreciate the compliment which you pay us in favoring us with this appointment. We confirm the rates which we quoted to you for our services, i. e.As Executor-1%% on the value of the Estate As Trustee 1% on termination of the trust, and 1%% per annum on the distribution of incoine
*29 These rates, as you know, are less than the statutory fees allowed in New York State and we request that you treat this arrangement as confidential between us.
Hoping that we may not be required to do more than hold the Will here for safekeeping subject to your order for a great many years, and that meanwhile you will find it convenient to make use of our services in any of the departments which are mentioned on the enclosed statement, believe me,
Very sincerely yours,
W.
HFW MWC
Vice President.”
16
ends
The original of that letter has not been found. Not till June, 1950 did any beneficiary of this estate learn that the trust company had copies of the letter in its file. The widow demanded return to the estate of the commissions on rents and, when refused, brought this proceeding to reopen the three accountings and disallow the rental commissions, alleging that the letter was a binding agreement forbidding such charges. The Surrogate held that the taking of the 5% fees on rents was illegal because of the meaning and effect of the letter and that the letter had been fraudently concealed by the bank. The Surrogate, therefore, reopened the three accounting decrees and surcharged the trust company therefor in the amount of about $110,000 plus simple interest. The Appellate Division reversed the Surrogate’s decree and dismissed the proceedings. Its holding was that the letter agreement did not deal with or preclude the fees in question.
There was another major difference between the views of the two courts. The Surrogate, as we have seen, found that the trust company’s failure to produce or disclose the letter was fraudulent. The Appellate Division, contra, found that while the failure to inform the court and the parties about the letter was a breach of fiduciary duty, that breach was merely an exercise of bad judgment and with no corrupt motive. We agree with both courts that it was as matter of law the clear duty of the trust company to show the letter to the Surrogate’s *30 Court and to the persons interested in the estate (Matter of People [Bond & Mtge. Guar. Co.], 303 N. Y. 423, 430, 431). The failure so to do, even if the fiduciary in good faith believed the letter to be of no significance or binding force or that it was superseded by or of the same meaning of the will, was a gross violation of duty. For the bank in the face of that letter to make or attempt to make unilaterally any determination in the matter, especially a determination so beneficial to itself, was inexcusable. But, having made all that plain, we need not decide whether the suppression of the letter was a fraud or a mistake as to duty. The trust company has at its own request in these proceedings been permitted to resign. For us now to choose as between the conflicting findings below (fraud or mistake) would serve no purpose. The real question is as to the meaning and effect of the letter.
The letter was written by one businessman to another (they had known each other for years) to confirm the rates previously ‘ ‘ quoted ’ ’ to Schinasi. On its face it is a memorial of a complete agreement and there is no evidence that it was intended as anything less than that. In it the bank wrote that it would be glad “to act as Executor and Trustee” under Schinasi’s will and that the rates quoted were “for our services ”, As trustee, it agreed to take “ 1% on termination of the trust, and per annum on the distribution of income ”. There was mention of the understanding of writer and addressee that these are ‘ ‘ less than the statutory fees ’ ’. There was a separate rate of 1%% per annum “ on the distribution of income ” by the bank “ as trustee ”. Rents on realty in the trust would be income of the trust. The collection of those rents would be “ services ” performed “ as trustee ”. The bank thus agreed to take as compensation for all its services in collecting any income, whether in the form of rents or otherwise, no more than of that income. The legality of an agreement for reduced commissions is unquestionable (Matter of Hayden, 172 Misc. 669, affd. 261 App. Div. 900, motion for leave to appeal denied 285 N. Y. 859). Wilson’s authority to bind the trust company is conceded. It follows that the 5% charges on rents were illegally collected. The Surrogate acted correctly in reopening the accounting decrees (Surrogate’s Ct. Act, § 20, subd. 6; Matter of Shonts, 229 N. Y. 374; Matter of Eitingon, 297 N. Y. 557) and in surcharging the trust company.
*31 The bank’s position is that the letter dealt with commissions for ordinary services as executor and trustee only and did not preclude additional compensation for extraordinary services in the collection of rents and management of real estate. As starting points for its argument it assumes two facts not proven: first, that it signed the letter without seeing the will, and, second, that it did not know that it would be called upon as executor to manage a number of parcels of real property. It is almost unbelievable that an experienced trust officer would agree to reduced commissions without seeing the will or knowing the kind of property and the duties involved. But his lack of information as to these matters could not change the plain terms of the agreement which his bank had voluntarily made. Furthermore, the bank did get all such information after testator’s death and before the probate and it could then have refused to qualify as executor and trustee. When it took office it did so under the binding terms of the complete contract expressed in the letter.
The bank argues that the letter, like the will, limited the rate of “ ordinary commissions ” only and had no effect on or relation to compensation for realty management and rent collection. The “ services ” referred to in the letter, says the bank, are those of the bank as executor and trustee, not as real estate manager and rent collector. But, as we have shown in an earlier part of this opinion, the collection of rental income of the trust corpus is trustee service (Matter of McCord, 2 App. Div. 324; Matter of Brennan, 251 N. Y. 39, 44, supra). The letter agreed to take fixed fees not for ‘ ‘ ordinary ’ ’ services or any other particular kind of services as executor or trustee but for “ services ”. That the statute allows additional pay for one kind of services is beside the point. Likewise irrelevant is the consideration that the trust company might have delegated the realty management functions to a paid agent (but see Matter of Wendel, 159 Misc. 900, affd. 248 App. Div. 713, affd. 273 N. Y. 532). Nothing like that occurred here. The trustee itself did the work but it was entitled to nothing extra for doing it since by its letter it had agreed to take for its services 1%% only on all income.
Since we hold that the letter controlled as to all income including rents, it is unnecessary to consider appellants’ argument that since some of these buildings were on “ net leases ”, *32 additional compensation for rent collection would be illegal (see Matter of Smathers, 309 N. Y. 487, supra).
Petitioner’s demand that compound interest instead of simple interest should be allowed on the surcharges, its demand that the trustee bank be removed instead of being permitted to resign and its demand that the trustee should because of faithlessness be denied all commissions are all beyond our reach as involving matters of discretion exercised adversely to petitioner by the courts below.
The order appealed from should be modified in accordance with this opinion and the decree of the Surrogate in all respects reinstated, with costs to all appellants against respondent Bankers Trust Company in this court and in the Appellate Division.