429 F.Supp. 1294 (1977)
Frank H. TEMPLETON, Jr., Plaintiff,
v.
CONTINENTAL ILLINOIS NATIONAL BANK & TRUST COMPANY OF CHICAGO, Defendant.
No. 73 C 2960.
United States District Court, N. D. Illinois, E. D.
March 31, 1977.
*1295 *1296 James D. Griffith and David H. Pauker, Chicago, Ill., for plaintiff.
Harry B. Holmes, Jr., McDermott, Will & Emery, Jenner & Block, Chicago, Ill., for defendant.

MEMORANDUM
LEIGHTON, District Judge.
This is a diversity suit by Frank H. Templeton, Jr., a Wisconsin citizen, one of two beneficiaries of an inter vivos trust, who claims that the defendant Continental Illinois National Bank & Trust Company of Chicago, an Illinois corporate trustee, has breached a contract and seeks to collect a larger termination fee than it was entitled to receive; that it has charged for extraordinary services not performed; that it has wrongfully withheld trust funds in order to pay itself the attorney fees and costs of this litigation; and that plaintiff is entitled to recover his attorney fees and costs from the corporate trustee, personally.[1] The case has been heard without a jury; and from the evidence received, the court finds that the following are the facts.

I.
On January 31, 1935, P. C. Butcher, assistant secretary of the Continental Illinois National Bank & Trust Company of Chicago wrote a letter addressed to Mrs. Theodore Harahan Templeton in which he said:
Dear Mrs. Templeton:
We enclose a revised copy of the trust agreement, which has been prepared for you, and which includes the changes agreed upon at the recent meeting with Mr. W. J. Harahan at the bank.

*1297 We also enclose a copy of the Fee Schedule which sets forth the fees that are being charged by our bank for its services as Trustee at the present time. Our fee at present is one-half of one percent upon the first $50,000. of principal of the trust, taken at market value, and one-fourth of one percent of the principal in excess of $50,000.
As we have told you, we are charging no acceptance fee at the establishment of the trust. There is a distribution or revocation fee which is collected at the time the trust is terminated, or the principal thereof is distributed to the beneficiaries. This fee depends upon the number of years that the trust has run. If the distribution is made within five years from the time the trust is set up, the fee is one percent, and if the distribution is made between five and ten years it is three-quarters of one percent; between ten and fifteen years one-half of one percent, and over fifteen years it is one-quarter of one percent of the principal. All of these you will find set forth in the pamphlet enclosed.
Four days later, Mrs. Templeton executed a trust agreement that made Continental Bank the corporate trustee and named her the life income beneficiary with power to invade the principal; or, if she desired, to amend, modify or terminate the agreement. The trust estate consisted of stocks, bonds, United States treasury notes, mortgages, real estate, and cash. By the terms of the agreement, the trustees were to invest, reinvest, and manage the trust estate under powers usually granted in connection with trust property. The settlor provided that her trustees were to be paid a reasonable compensation for their service.
The trust remained in force until June 29, 1972 when the settlor executed an amendment and restatement which, in substance, retained the terms of the original agreement. She provided that on her death the trustees were to pay her debts, funeral expenses, taxes, administration expenses of her testamentary estate, and the bequests under her will. The plaintiff and his sister Ann Templeton, were the remaindermen beneficiaries. Article II of the amendment provided that the corporate trustee consult plaintiff and his sister "* * * before making any sales of assets after my death and before making any distributions to the Executor, since it is my desire that my children be able to select from my trust and my estate assets which will eventually comprise their shares of the assets which they will receive from me." With regard to compensation, the amendment stated that "[t]he Trustees shall be entitled to a reasonable compensation out of the trust for services and shall be reimbursed out of the trust for all expenses incurred in its management and conservation."
The settlor died on January 20, 1973. And during the 38 years of the trust's existence under two agreements Continental Bank was paid fees for its services in accordance with existing fee schedules which, from time to time as the costs of doing business increased, were reviewed and revised upward. This occurred in 1944, 1958, 1968 and 1970. Pamphlets issued at various times contained language that told customers the current fees were "* * * for the usual services required to manage a trust and are subject to adjustment in the event of increased costs, or if new laws, changing practices, or unusual services add to the work and responsibility of the trustee." Continental Bank billed the settlor for its fees; they were paid, and on one occasion, a small charge for termination was made, not according to the schedule referred to in the letter of January 31, 1935, but in accordance with the schedule then in force. It, too, was paid by the settlor.
A short time after Continental Bank learned of the settlor's death, there was a meeting with a trust officer and the remaindermen beneficiaries. Instructions were issued telling responsible officers of the corporate trustee to begin accumulating information necessary for distribution of the trust estate. Not long afterwards, plaintiff and his sister raised questions concerning the status of a lawyer who had represented their mother before her death, *1298 expressing the view that they did not want him to represent the trust and testamentary estates. These questions led to a series of letters, conferences and communications between the corporate trustee and the plaintiff, resulting in the resignation of the lawyer in question. Thereafter, plaintiff objected to the lawyer's bill for fees and reimbursement of expenses. This resulted in an exchange of memoranda, writing of letters, meetings attended by representatives of the corporate trustee, after which it was concluded that the lawyer's bill was proper and had to be paid.
Later, discussions ensued between the responsible trust officer and the beneficiaries concerning sale of certain trust assets to provide monies for taxes which had to be paid before the trust could be distributed. These discussions disclosed there were differences between plaintiff and his sister about details of the trust's administration. They and the corporate trustee were co-executors of their mother's will. By law, the testamentary estate could not be closed before September 16, 1973 because the claim period extended to that day. The alternate tax evaluation date was July 20, 1973; the state inheritance tax return was filed on November 20, 1973. And when it was completed by the corporate trustee, the federal estate tax return showed that on the settlor's death, her estate had a gross value of $846,087.29, taxable in the sum of $744,514.96.
In the meantime, by letter, conferences in the offices of the corporate trustee, and in telephone conversations with the beneficiaries, steps were being taken to complete a plan for distribution of the trust estate. At the same time, a disagreement developed between plaintiff and his sister concerning the sale of certain shares of stock she characterized as her half of the trust corpus. Then early in June 1973, plaintiff called the responsible officer who told him that when the trust was distributed, the corporate trustee was going to charge a termination fee and a fee for extraordinary services. This conversation was followed by a letter in which plaintiff was furnished the corporate trustee's then current fee pamphlet informing its customers that on termination of a trust a fee is charged "computed on the basis of the distribution value." In letters that followed, plaintiff was told the termination fee was $8,645; and in addition, there was to be a fee of $8,900 for what was described as extraordinary services, the details of administration the trust estate had required since the settlor's death.
Plaintiff's sister did not object; but he disagreed with the claims for fees. He responded in a letter that disputed the reasons advanced for them, saying "[m]y position is that I will contest both the fees, the termination fee and the fee for unusual services, until I can see a much better reason for paying them." A short time later, plaintiff employed a lawyer to represent him in his disagreement with the corporate trustee.
Then on September 13, 1973, the corporate trustee wrote plaintiff asking him to approve the sale of certain stock then part of the trust corpus. The letter enclosed a copy of the standard receipt and release form the corporate trustee required a distributee to sign when a trust estate is terminated. He was asked that if there was any reason for not signing the receipt, "* * * it would be our expectation to settle such outstanding issues before the complete distribution of the trust." The plan for distribution of the trust was in its final stages of completion, had been the subject of discussions between plaintiff, his sister and the corporate trustee; but it had not been approved by either beneficiary.
On November 21, 1973, without having approved distribution of the trust, plaintiff filed the suit in this case. His complaint contained one count in which he alleged creation of the 1935 trust by his mother, her death and his interest as a residuary beneficiary, the corporate trustee's demand for fees he said were unreasonable, the request that he execute a release as a distributee, and the failure to distribute the trust estate. Within five months, plaintiff and his sister approved the trustee's plan for distribution of the trust; his sister paid her share *1299 of the trustee's fees; he executed a receipt and partial release acknowledging that subject to the issues in litigation $37,366.96 was being retained by the corporate trustee to cover his share of the claimed fees, plus a reserve of $10,000 for the attorney fees and costs of this case.
A short time later, plaintiff supplemented his complaint with Counts II and III in which he alleged that as a result of discovery proceedings, the letter that had been written to his mother in 1935 was produced by the corporate trustee; that this letter was a contract which set the applicable termination fee at one-quarter of one percent of the trust's value on distribution; that based on the $293,596.20 he received as his share of the trust, the termination fee was $731.49, not the $4322.50 the corporate trustee was demanding; that withholding of $10,000 to cover possible attorney fees in this litigation was improper; and that the demands for unreasonable fees had caused the filing of this suit; therefore, plaintiff was entitled to recover judgment against the corporate trustee, personally, for $7000 he had expended in attorney fees, plus costs.
These two counts were dismissed after another judge of this court granted defendant's motion for summary judgment. Plaintiff took an appeal that resulted in the reversal of this dismissal. After the cause was remanded to this court, he further supplemented his complaint with Counts IV, V and VI realleging certain paragraphs contained in his original complaint and asserting his claim that the corporate trustee was not entitled to the termination fee it was demanding; that the fees for extraordinary services were unreasonable; and that the trustee, by its conduct, had forfeited its right to compensation.

II.
These allegations, defendant's denials in its answers, the evidence heard by the court, and the contentions of the parties, present five issues.

1. Whether the letter written to the settlor on January 31, 1935 was a contract between her and the corporate trustee concerning the payment of termination fees.
The original copy of the January 31, 1935 letter was found in the files maintained by the corporate trustee for the trust created by the settlor. It was the corporate trustee's clear duty to have shown this letter to the settlor, or to persons interested in the trust estate; and failure to do so, even in good faith, would have been a gross violation of its duty. See Estate of Schinasi, 3 N.Y.2d 22, 163 N.Y.S.2d 644, 143 N.E.2d 369 (1957). However, there is no reason to believe that this duty was not discharged. In any event, where delivery of a letter must be proved to protect the interest of a settlor or a beneficiary, and proof is made that the trustee wrote the letter and placed it in the trust file, constructive delivery of the letter is established. Cf. Pederson v. Jordan, 177 Wash. 379, 32 P.2d 114, 115-116 (1934); Life & Casualty Ins. Co. of Tenn. v. Gurley, 229 F.2d 326, 330 (4th Cir. 1956). But even if such a rule is not applicable to this case, proof that the letter was retained in the files of the trust suggests and permits the inference that it was transmitted to the settlor and left by her in the possession of the corporate trustee when she signed the trust agreement.[2] Therefore, either by relying on the doctrine of constructive delivery, or by drawing the inference which is reasonably supported by the evidence, this court will proceed on the assumption that *1300 the settlor knew of the letter and acted accordingly.
Turning, then, to the letter itself, the question to be decided is whether it was a contract between the corporate trustee and the settlor with regard to the termination fees to be paid out of the trust on distribution of the trust estate. In order for there to be a contract, there must be an offer, an acceptance and consideration to support the formation of a legally and enforceable agreement. Premier Electrical Construction Co. v. Miller-Davis Co., 291 F.Supp. 295 (N.D.Ill.1968), aff'd 422 F.2d 1132 (7th Cir. 1970). "A contract is a promise, or set of promises, for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." 1 Williston on Contracts § 1 (3d ed. 1957). And whether an act or conduct constitutes a proposal on which a binding contract can be predicated without further action by the person from whom it proceeds, or is a preliminary step which without further action by such party is not susceptible of being converted into a binding contract, depends on the nature of the particular act or conduct and the circumstances attending the transaction. 17 Am. Jur.2d Contracts § 33 (1964). Accordingly, whether a communication naming a price is a quotation or an offer depends on the intention of the person as it is manifested by the facts and circumstances of each particular case. Nebraska Seed Co. v. Harsh, 98 Neb. 89, 152 N.W. 310 (1915).
These principles have led one court to conclude that where an intended executor-trustee writes a potential customer saying that it will accept as compensation for its services a fixed percentage of distributed principal and income, one less than that allowable by statute, and the customer executes a will based on the agreed compensation, the letter is a contract. Estate of Schinasi, 3 N.Y.2d 22, 163 N.Y.S.2d 644, 143 N.E.2d 369 (1957). But where a letter signed by only one party either conveys a counter-offer or transmits an agreement without acceptance or action by the other, no contract is created. See Fleming v. Parkview Colonial Manor Inv. Co., Inc., 31 Ill.App.3d 6, 333 N.E.2d 587 (1975); John Kubinski & Sons, Inc. v. Dockside Develop. Corp., 33 Ill.App.3d 1015, 339 N.E.2d 529 (1975).
In this case, the letter in question was the means by which a trust agreement was sent; it explained an enclosed fee pamphlet that told the settlor what were the corporate trustee's current fees, including those to be charged on termination of the trust. No promise was made by the corporate trustee; it alone, by its assistant secretary, signed the letter; and no action concerning the matter was ever taken by the settlor. The enclosed fee pamphlet has not been found; but from uncontradicted evidence, it appears the corporate trustee's pamphlets always contained language informing its customers that current fees were subject to review and revision upward to meet rising costs of doing business. No evidence has been offered in support of plaintiff's contention that the trustee agreed to abandon what is a common policy of corporate trustees. For these reasons, this court is compelled to conclude that the 1935 letter was not a contract; it was a letter of transmittal. Therefore, plaintiff's theory of contract concerning the letter cannot be sustained.

2. Whether the corporate trustee, by failing to terminate and distribute the trust estate until 16 months after the settlor's death, forfeited its right to compensation.
This issue is raised by plaintiff's argument that defendant failed to make a timely distribution of the trust. He asserts that by a letter dated November 15, 1973 to his sister, the trustee implied it was going to continue administration of the trust until, at least, November 1974. In the original count of his complaint, plaintiff sought a determination that defendant had forfeited its right to compensation because it had not distributed the trust estate with a reasonable degree of dispatch after the settlor's death. His post-trial brief rejects defendant's reliance on that provision of the 1972 *1301 agreement which requires the corporate trustee to consult with the beneficiaries before making a distribution; and he thinks there is no merit to defendant's claim that distribution of the trust could not be made until expiration of the time within which claims could have been filed against his mother's estate in the probate court. Plaintiff does not, in fact he cannot, deny that his mother gave her trustees considerable discretion in the administration of the trust she created. In fact, as part of his argument, he points to the provision in which his mother said that "[i]n making any division or distribution hereunder the Trustees may assign to any trust, and may distribute, any property in kind or any undivided interest in property, and the judgment of the Trustees with respect to the value of any property assigned to any trust or distributed in kind shall be conclusive."
It is a general rule in the law of trusts that "[c]ourts of equity will not * * interfere with the exercise of the discretionary powers of a trustee in the absence of proof of fraud, bad faith, or abuse of discretion * * *." Continental Ill. Nat'l Bk. v. Sever, 393 Ill. 81, 93, 65 N.E.2d 385, 391 (1946). Tankersley v. Albright, 374 F.Supp. 538, 543 (N.D.Ill.1974), aff'd in part, rev'd in part, 514 F.2d 956 (7th Cir. 1975). The evidence establishes that as soon as information was received by defendant that the settlor had died, steps were taken aimed at ultimate distribution of the trust estate. Agreement had to be reached with the beneficiaries concerning sale of trust assets to provide the money needed for taxes. Consideration had to be given to the tax impact of such sales, not only on plaintiff but on his sister whose views on these matters differed from his. There existed a relationship between the settlor's testamentary estate and the trust. An alternate tax evaluation date had to be obtained from the appropriate authority; and the required tax returns, federal and state, had to be prepared. A plan of distribution had to be agreed upon in accordance with the terms of the trust. In the meantime, the corporate trustee was required to devote attention to the unpleasant disagreement plaintiff and his sister had generated concerning a lawyer who had represented their mother in her lifetime, but who was not acceptable to them. Although the terms of the trust required the beneficiaries to agree to a plan of distribution, plaintiff elected, without his sister's participation, to embark on litigation with the corporate trustee concerning its claim to compensation. No evidence heard by this court suggests in any way fraud, bad faith or abuse of discretion on the part of the corporate trustee. There is no claim that plaintiff suffered any loss because the trust estate was not distributed until 16 months after the settlor's death.
It has been said that while it is true "* * * a trustee may not recover fees or commissions for his services where he has neglected his duties, exercised bad faith in the conduct of his trust, or committed a breach of his obligation, such facts must be clearly shown in order to justify depriving him of his fees or commissions legitimately earned in the performance of his duties, and it must appear that he acted in bad faith as a trustee." Jarrett v. Johnson, 116 Ill.App. 592, 601 (1904); see 3 Scott on Trusts § 243 (3d ed. 1967); Bogert, Trusts and Trustees § 980 (2d ed. 1962); Annot., 110 A.L.R. 566 (1937). The evidence in the record and this well established principle dictate the conclusion that the corporate trustee has not forfeited its right to compensation merely because the trust estate was not distributed until 16 months after the settlor's death. Compare Belcher v. Birmingham Trust National Bank, 348 F.Supp. 61 (N.D.Ala.1968); see 90 C.J.S. Trusts § 407 (1955).

3. Whether on the facts of this case the fees claimed by defendant were reasonable within the meaning of the trust agreement.
Next to plaintiff's claim that the corporate trustee had failed to make a timely distribution of the trust, the most important reason for this litigation was information given him that a fee of $8,900 was going to be charged for what was described as special or extraordinary services. In the original count of his complaint, plaintiff *1302 alleges that this charge was unreasonable. In his post-trial brief, he argues that no extraordinary services were performed by the corporate trustee. He insists that no claims were paid through the trust; and that preparation of the federal estate and state inheritance tax returns was the responsibility of the executor of the estate, not that of those who were administering the trust. The corporate trustee meets this argument by pointing out that no importance attached to the name used in describing the services performed after the settlor's death; and that the term used in the applicable fee brochure was "special services." Further, it is argued that an expert on fees for corporate trustees in this community testified, without being contradicted, that the term "extraordinary services" does not necessarily indicate unusual or unique services, but rather is a "word or jargon used within the trust industry to designate fees attributable to these [post-death services] and differentiate them from the annual fees or termination fees."
In resolving this controversy, the court has carefully examined the trust agreement as amended in 1972 by the settlor and observes the provision that "[t]he Trustees shall be entitled to reasonable compensation out of the trust for services and shall be reimbursed out of the trust for all expenses incurred in its management and conservation." In a leading case where the court was required to define the term "reasonable compensation," Hayward v. Plant, 98 Conn. 374, 119 A. 341 (1923), it was said that "[i]n this connection, `reasonable' means what is fair in view of the size of the estate, the responsibilities involved, the character of the work required, the special problems and difficulties met in doing the work, the results achieved, the knowledge, skill, and judgment required of and used by the executors, the manner and promptitude in which the estate has been settled, and the time and service required, and any other circumstances which may appear in the case and are relevant and material to this determination." 119 A. 341 at 345; see Kogut v. Brenner, 113 R.I. 327, 321 A.2d 103 (1974); Scott on Trusts § 242 (3d ed. 1967). One eminent authority has said that "[i]f by the terms of the trust it is provided that the trustee shall receive `reasonable' compensation, the court will usually award the same amount which it would award in the absence of such a provision * * *." 3 Scott on Trusts § 242.4 at 2122 (3d ed. 1967).
In the case before the court, the gross estate had a value of in excess of $800,000. Under the terms of the trust, the trustees were to invest and reinvest the trust corpus, distribute the income, and on the settlor's death, terminate and distribute the trust estate. These same terms required the corporate trustee to confer with the beneficiaries in order to consider questions dealing with the sale of designated trust assets and their tax impact on the trust estate and on the beneficiaries. Through responsible trust officers, it had to deal with differences that arose between the two beneficiaries. Defendant had to coordinate its testamentary estate trust divisions in order to probate the settlor's will and administer the trust. Although plaintiff disputes the corporate trustee's responsibility for the federal estate and state inheritance tax returns, no one familiar with these matters would trivialize the corporate trustee's role in the preparation and filing of these returns. More importantly, under the terms of the trust, the corporate trustee had to confer with the beneficiaries in formulating the plan for distribution of the trust estate taking into account its fiduciary obligation to the trust estate and to the beneficiaries. In a case like this one, this court sits in equity; and it will not hesitate to say that if the corporate trustee had applied for an allowance of fees to compensate it for the work done following the settlor's death, considering the size of the estate, the responsibilities, the character of the work, the special problems met and resolved, the results achieved, the knowledge, skill and judgment, and the promptitude with which the estate was settled, it would have allowed the corporate trustee at least the $8900 it had informed plaintiff it would charge when the trust estate was distributed. Therefore, it is this court's *1303 judgment that the corporate trustee was entitled to the sum of $8900 for the services it rendered the trust estate after the settlor's death either because the services were extraordinary, were special; or more importantly, because the charges were reasonable compensation within the meaning of the trust agreement. Commerce Trust Co. v. Aylward, 145 F.2d 113 (8th Cir. 1944); 3 Scott on Trusts § 242 (3d ed. 1967).

4. Whether the corporate trustee can charge the trust estate with the attorney fees it has incurred in this litigation.
This suit was filed while plaintiff's sister, the other beneficiary, was considering the plan for distribution and termination of the trust. During the entire period following her mother's death, the sister had expressed approval of all the steps the corporate trustee had taken in administering the trust and in making plans for distribution of the estate. Documentary evidence discloses that she neither disapproved of the termination fee nor of the corporate trustee's charge for special or extraordinary services. She did not join in this suit; nor has she ever raised any claim against the corporate trustee. She has paid her share of the fees.
In answer to plaintiff's original complaint, the corporate trustee denied it had failed to make a timely distribution of the trust. In its post-trial brief, it argues that distribution could not have been made when demanded by plaintiff because the other beneficiary was considering the plan of distribution. The trustee points out that it owed a fiduciary duty to the sister; and, it had to consider her wishes, as well as those of the plaintiff. As a consequence, it had to defend plaintiff's suit because distribution of the trust on his demand would have required violations of important provisions of the trust.
Not long after the suit was filed, plaintiff agreed to sign a receipt and partial release which provided that there was to remain in the trust a reserve of $10,000 for attorney fees which the trustee expected to incur in the defense of this suit. It was agreed by the parties that this sum, plaintiff's share of the claimed fees, and an additional sum for an unrelated matter, would remain as the trust corpus to be delivered to the plaintiff after the issues in this case are resolved. Now, plaintiff argues that the corporate trustee is not entitled to charge the trust corpus with its attorney fees of this case because its defense of the suit is not to preserve the trust; it is to preserve its fees, defending a suit that brings into issue its claim for compensation and its failure to make timely distribution of the trust estate.
Against this argument, defendant contends that plaintiff misunderstands the circumstances under which courts would permit a trustee reimbursement for necessary litigation expenses. It argues that to obtain reimbursement, it is not necessary that a trustee's court actions advance the interest of the trust. In a case like this one, insists the corporate trustee, if its actions are challenged and it defends in good faith, with success, then, without regard to any direct benefit to the trust estate, the trustee may be reimbursed the attorney fees he incurs.
In Weidlich v. Comley, 267 F.2d 113 (2d Cir. 1959), a trustee for the shareholders of a dissolved corporation was charged with mismanagement in disposing of the corporation's assets. He successfully defended; and later, out of the trust assets, he was allowed his expenses in defending the action. On appeal it was contended that this allowance was error; that it should not have been made because the expenses were incurred on defendant's individual interest. The court disagreed, saying that the "* * trustee was appointed to administer the assets; the settlor selected him to do so, and whatever interferes with his discharge of his duty pro tanto defeats the settlor's purpose. When the trustee's administration of the assets is unjustifiedly assailed it is a part of his duty to defend himself, for in so doing he is realizing the settlor's purpose. To compel him to bear the expense of an unsuccessful attack would be to diminish the compensation to which he is entitled and which was a part of the inducement to *1304 his acceptance of the burden of his duties." 267 F.2d 133 at 135; see Jessup v. Smith, 223 N.Y. 203, 207, 119 N.E. 403, 404 (1918).
In Illinois, whose laws govern the construction of the trust in question, it has been held " * * * that a trustee not at fault is entitled to be reimbursed for all expenses properly incurred in the administration of the trust and has an equitable lien on the trust estate for such expenses." Kerner v. Peterson, 368 Ill. 59, 81, 12 N.E.2d 884, 894 (1937). More particularly, it is the Illinois rule that where a beneficiary brings a groundless suit against his trustee, the attorney fees and expenses of defending the allegations are to be paid out of the complainant's share in the trust estate, and not charged against the estate, generally. Patterson v. Northern Trust Co., 286 Ill. 564, 122 N.E. 55 (1919). From these cases, this court concludes that plaintiff's suit interfered pro tanto with the discharge of the corporate trustee's duties; it was groundless; and under the circumstances, the corporate trustee has the right to charge the trust estate, now consisting of the reserve, with the attorney fees it has incurred in this litigation. Compare Brown v. Commercial Nat'l Bank of Peoria, 94 Ill.App.2d 273, 237 N.E.2d 567 (1968); see Reed v. United States National Bank of Portland, 213 F.Supp. 919 (D.Or.1963); Annot., 9 A.L. R.2d 1132 (1950).

5. Whether plaintiff can recover his attorney fees and costs of this litigation from the corporate trustee, personally.
This issue, in view of the court's disposition of the others, has to be resolved in the negative. In fact, it has been held, consistent with the general rule, that where the beneficiaries of an express trust sue the trustee and are unsuccessful in their suit, they must pay the attorney fees and costs of the litigation. Ex parte Moots, 217 Ill. App. 518 (1920); see Annot., 9 A.L.R.2d 1132, 1236 (1950). Therefore, in this case, plaintiff cannot recover his attorney fees and costs from the corporate trustee, personally. And for the reasons given in this memorandum, judgment will be entered that the plaintiff take nothing by his complaint; that this suit be dismissed on the merits; and that the defendant recover from him its costs of this action.
So ordered.
NOTES
[1] In the balance of this Memorandum, Frank H. Templeton, Jr., will be referred to as plaintiff; Continental Illinois National Bank as the corporate trustee or defendant, even though the events described in the statement of facts occurred before this suit was filed.
[2] In reversing the dismissal of plaintiff's suit, the Court of Appeals stated, that finding of the letter in the corporate trustee's "* * * file suggest[s] and would permit a trier of fact to infer that the letter was transmitted to Mrs. Templeton and left by her at the bank when she signed the trust agreement. Absent other proof, the reasonable interpretation of the third paragraph of the letter is that whatever flexibility the bank may have reserved as to annual or similar periodic fees, the bank limited its fee at termination to the percentages set forth in the letter." After the remand, this court heard evidence which, in its judgment, proves that the reasonable interpretation referred to by the Court of Appeals does not apply to the facts of this case.